**FISHER FOODS, INC., Plaintiff,**

v.

**The OHIO DEPARTMENT OF LIQUOR CONTROL and The Ohio Liquor Control Commission, Defendants.**

**No. C80–2381.**

United States District Court, N.D. Ohio, E.D.

Dec. 28, 1982.

Walter Bates, Arter & Hadden, Thomas Chema, Anthony Damelio, Jr., Cleveland, Ohio, for plaintiff.

William Brown, Ohio Atty.. Gen., Chief Fed. Litigation Section, Gene Holliker, Columbus, Ohio, for applicants to intervene.

Bernard Goldfarb, Karen Moellenberg, Goldfarb & Reznick, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

WHITE, District Judge.

The plaintiff, Fisher Foods, Inc., is engaged in the business of operating a chain of retail grocery stores. As part of its business the plaintiff purchases and sells alcoholic beverages, specifically beer and wine. The defendant Ohio Liquor Control Commission is an agency of the State of Ohio and is authorized to and has promulgated rules and regulations to carry out provisions of Ohio's Liquor Control laws. The plaintiff alleges that certain regulations enacted by the Liquor Control Commission pertaining to the sale of beer and wine constitute a combination or agreement in restraint of Trade or Commerce in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.* This matter is before the Court upon the parties cross motions for summary judgment.

The State of Ohio has established rules and regulations setting forth mandatory mark-ups for wine and beer sold in Ohio. Ohio Revised Code § 4301.041 authorizes the Liquor Control Commission to determine and fix by regulating the minimum

percentage mark-up for sales at retail of beer, lager beer, ale, stout, porter, or malt liquor, whether in case lot or less. To determine the retail price of beer, the minimum percentage mark-up may be applied to the wholesale price of the manufacturers or wholesale distributors charge to the retail permit holder. Such prices shall apply to sales made at retail for off premises consumption only.

Regulation 4301:1–1–72 was promulgated pursuant to Ohio Revised Code § 4301.041. Subdivision C of regulation 4301:1–1–72 sets the price for retail sale of beer at not less than a minimum mark-up of 25 percent (25%) above cost. The definition of cost depends on the type of permit holder involved. Cost to an A–1 permit holder (beer manufacturer) is the wholesale invoice price for the same brand to Class C and D permit holders. (Reg. 4301:1–1–72(C)(1)) Cost to a B–1 permit holder (beer wholesaler) shall be the wholesale invoice price for sales by B–1 permit holders to Class C and D permit holders for the same brand, (Reg. 4301:1–1–72(C)(2)), and the cost for C and D permit holders (retailers) is the wholesale cost to them as shown by the invoice. (Reg. 4301:1–1–72(C)(3)). Deposit charges for the carton or case, bottles or containers are not included as part of the cost or included in any computation for determining the minimum retail selling price. (Reg. 4301:1–1–72(C)(4)).

Ohio Revised Code 4301.13 authorizes the Liquor Control Commission to regulate the manner of dealing in and distributing and selling bottled wine within the State. Pursuant to this statute, regulation 4301:1–1–03 was enacted providing what may be characterized as a two tier pricing system. The first tier is the commission-fixed minimum prices below which no sale may be made in the State. According to division (G)(1) of Regulation 4301:1–1–03 the Commission is to take into consideration and be guided by the current selling price of wine in bulk in California, the current selling prices for California wines in bulk in the principal markets of the United States, transportation charges to Ohio, all taxes and assessments and levies on wine, and the costs of labels, containers, crowns, caps, and seals. The determination of this cost is termed the prevailing cost. To the prevailing cost is added a bottling cost mark-up of 18 percent (18%) and the price is now termed the minimum base cost. Then a wine wholesaler's mark-up of thirty-three and one third percent (33⅓%) of the minimum base cost is added, which price is deemed the minimum wholesale price to retail permit holders. This mark-up is to cover the cost of doing business by a distributor at wholesale for such items as labor, salaries of executives and officers, rent, depreciation, and maintenance of equipment and property and the like.

The second tier of the pricing system is found in Regulation 4301:1–1–03(G)(2)–(5). This requires all out of state sellers, distributors and Ohio wine producers and wholesalers to file a quarterly statement or price schedule with the Department of Liquor Control. This schedule must contain the name of every brand to be sold, and the kind, type, and class of wine, size of container, and the alcoholic content. It must also include the invoice price of the wine without any discount to holders of B–5 permits (wholesale wine dealers). (Reg. 4301:1–1–03(G)(3)(c)). The minimum wholesale price, which constitutes the price of which wine may be sold to retailers, is then determined. This minimum wholesale price is computed by taking a minimum mark-up of not less than thirty-three and one third (33⅓%) percent of the invoice price of the wine without discount (Reg. 4301:1–1–03(G)(3)(d)), and cannot be lower than the Commission-fixed minimum. The price schedule must contain prices for all brands of wine to be sold to retail permit holders. The single bottle retail price must be fifty (50%) percent over and above the minimum wholesale price posted for each particular wine. The minimum retail price of units of one case of the same size, type, class, and kind of wine shall be forty (40%) percent over and above the minimum wholesale price posted for that particular wine. (Reg. 4301:1–1–03(G)(3)(f)). The wholesale price plus the mark-up is the

minimum price at which a retailer may sell the wine.

The plaintiff claims that Ohio Revised Code § 4301.041 and 4301.13 and the regulations promulgated thereunder permit producers to establish prices at which wholesalers and retailers may sell the producers's product in the State of Ohio thus constituting resale price maintenance in illegal restraint of trade.

■ The preliminary question to be decided is whether Ohio's Statutes and Regulations for pricing of beer and wine violate the Sherman Act. The Sherman Act has been held to apply to circumstances where a producer sets prices at which wholesalers and retailers may sell the producer's product. Arrangements such as this are designed to maintain prices and prevent competition. *Dr. Miles Medical Company v. John D. Parks & Sons Company,* 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911). Until 1975, the Miller Tydings Act allowed states to authorize resale price maintenance. Since the repeal of the Miller Tydings Act, the Sherman Act applies to fair trade contracts unless there is special anti-trust immunity.

The U.S. Supreme Court in *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), struck down a California wine pricing scheme requiring wine producers and wholesalers to file fair trade contracts or price schedules with the State. If a producer failed to set prices through a fair trade contract the wholesaler had to post a resale price schedule and could not sell wine to a retailer at a price different than that set in a price schedule or a fair trade contract. Any wholesaler selling below the established prices would be subject to a fine or license suspension or revocation. In finding that California's wine pricing system constituted resale price maintenance in violation of the Sherman Act, the Court determined that the wine producer held the power to prevent price competition by dictating the prices charged by wholesalers. "As Mr. Justice Hughes pointed out in *Dr. Miles* such vertical control destroys horizon-

tal competition as effectively as if wholesalers formed a combination and endeavored to establish the same restrictions … by agreement with each other." *Midcal,* supra 445 U.S. at 103, 100 S.Ct. at 942. In California the State played no role in setting retail prices. Producers set prices according to their own economic interest, without regard to any anti-competitive effect. The State was restricted to enforcing the prices set by producers. *California Retail Liquor Dealers Association v. Midcal,* supra citing *Rice v. Alcoholic Beverage Control Appeals Boards,* 21 Cal.3rd 431, 146 Cal.Rptr. 585, 579 P.2d 476 (1978).

A District Court in Connecticut was presented with an action to strike down the Connecticut liquor pricing scheme as constituting resale price maintenance in violation of the Sherman Act wherein the plaintiff relied on *California Liquor Dealers Association v. Midcal Aluminum,* supra, *Serlin Wine and Spirit Merchants, Inc., v. Healy,* 512 F.Supp. 936 (D.Conn.1981), affirmed sub nom. *Morgan v. Board of Liquor Control,* 664 F.2d 353 (2nd Cir.1981). The Court held Connecticut's wine pricing system which consisted of a three tier pricing scheme by which prices were set by manufacturers, or out of state shippers, wholesalers and retailers to be valid. The manufacturer or out of state shipper files with the Division of Liquor Control a list of prices at which it will sell its products in Connecticut during the next month. The wholesaler files a list of prices at which it will sell to retailers. The wholesalers' price to the retailer cannot be lower than the wholesalers' cost as that term is statutorily defined, which cost must include a minimum eleven (11%) percent mark-up. On beer there must be a twenty (20%) percent mark-up; wine bottled in Connecticut requires a mark-up of thirty-six (36%) percent. The retailer must add twenty-one and one half (21½%) percent mark-up on spirits, twenty-eight (28%) on cordials, and thirty-three and one-third (33⅓%) percent on wine.

The 2nd Circuit Court of Appeals in affirming the *Serlin* case in *Morgan v. Division of Liquor Control,* supra distinguished

the two cases. The State of Connecticut establishes the mark-up and does not permit private parties to engage in resale price maintenance. It does not control the initial offering price decided by the manufacturer or out of state shipper. Once the initial price is reported, the statutory scheme determines the wholesale and retail price which must be charged without any compulsion or participation by the state. The California statutes are distinguishable from Connecticut's because the Connecticut statutes do not authorize or compel private parties to enter into contracts or combinations to fix prices.

■ The Ohio Statutes and Regulations are similar to those of Connecticut. The manufacturer or out of state shipper submits a price list to which state established minimum mark-ups are added by the manufacturer or out of state shipper, wholesaler, and retailer. All prices are controlled by the State except the initial offering price. The manufacturer or out of state shipper does not control prices charged by wholesalers to retailers or by retailers to their customers. The manufacturer's price which constitutes part of the wholesalers and retailers statutorily defined cost does not amount to a contract, combination, or conspiracy under the Sherman Act. See *Serlin Wine & Spirit Merchants, Inc., Healy,* supra. The Sherman Act prohibits a private party, by contract, combination, or conspiracy from controlling prices at which another private party can sell a product. *Albrecht v. Herald Company,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). *Serlin Wine & Spirit Merchants, Inc., v. Healy,* supra. As previously stated, in *Midcal* private parties were required to enter into contracts or combinations to fix prices in violation of the Sherman Act. Ohio's pricing scheme does not allow for an agreement between two or more persons to set prices. See *United States Brewers Association, Inc., v. Healy,* 532 F.Supp. 1312 (D.Conn. 1982).

■ Although Ohio's beer and wine pricing statutes may seem to have an anti-competitive effect and may conflict with the policy of the Sherman Act, this conflict will not invalidate a state economic regulation. *New Motor Vehicle Board v. Orrin W. Fox, Inc.,* 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1971). If every adverse effect on competition would render a state's statute invalid a state could not engage in any type of economic regulation. *Exxon Corp., v. Governor of MD* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). It may also seem as though manufacturers could use the automatic statutory mark-ups to control resale prices by adjusting their initial prices. However this can occur only because the State has caused the mark-up, not because manufacturers or out of state shippers have formed a combination or conspiracy. Fierce competition at the retail level should prevent conspiracies to establish prices for beer and wine. See *Morgan v. Division of Liquor Control,* supra at 355 fn. 2. Without a finding of an agreement between two or more parties to set prices there cannot be a finding of a violation of the Sherman Act.

■ Even if this Court had found that Ohio's beer and wine pricing scheme is facially invalid the state action doctrine set forth in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), providing for state anti-trust immunity is applicable. The Court in *Parker,* held that states are sovereign unless Congress has nullified certain powers. It was not the purpose of the Sherman Act to prohibit a state from imposing certain anti-competitive restraints as an act of government. The intention of the Sherman Act is to prohibit combinations to restrain trade by individuals and not restraints imposed by states pursuant to state law.

■ Beginning in 1975, the Supreme Court rendered several decisions defining the scope and application of the *Parker* case. See *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), *Cantor v. Detroit Edison Company,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976), *Bates v. State Bar Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), *City of Lafayette Louisiana v. Louisiana*

*Power and Light Company,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), *New Motor Vehicle Board of California v. Orrin W. Fox Co.,* supra. In *California Retail Liquor Dealers Association v. Midcal Aluminum,* *supra,* the Court found that these decisions established two standards for anti-trust immunity under *Parker v. Brown,* supra. First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; Second, the policy must be actively supervised by the State itself.

California's statutory wine pricing scheme requiring wine producers to enter into trade contracts with wholesalers or establish binding resale price schedules for wholesalers was held to satisfy the first standard but did not meet the second requirement for *Parker* immunity because of lack of actual state supervision. The State simply authorized price-setting and enforced the prices established by private parties. It did not establish prices or review the reasonableness of the price schedules, nor did it regulate the terms of the fair trade contracts. "[W]hat is really behind the Supreme Court's clear articulation and act of supervision test announced in *Midcal,* to successfully invoke *Parker* protection, is the fear that 'a gauzey cloak of state involvement' only creates a 'sham' for 'what is essentially a private price fixing arrangement.' When the facts of *Midcal, Lafayette, Cantor & Goldfarb* are placed beside those of *Bates, Orrin,* and *Parker* it is readily apparent that the Supreme Court saw the essential private, proprietary interest seeking to shield itself from liability-resulting in denying anti-trust immunity and causing the creation of the two pronged test in *Midcal.*" *Serlin Wine & Spirit, Inc., v. Healy,* at 941 n. 15.

█ The existence of specific statutory authorization for the restraint imposed is sufficient to satisfy the first prong of the *Midcal* test. *California Retail Liquor Dealers Association v. Midcal Aluminum,* supra. O.R.C. 4301.041 authorizes the Ohio Liquor Control Commission to fix minimum mark-ups for retail sales of beer. The Liquor Control Commission is empowered to determine and fix minimum mark-ups at wholesale and retail or both for bottled wine and minimum prices at which various classes of bottled wine shall be distributed and sold in Ohio by O.R.C. 4301.13. The Supreme Court of Ohio in *Pompei Winery v. Board of Liquor Control,* 167 Ohio St. 61, 146 N.E.2d 430 (1957), noted that the fundamental purpose of the Liquor Control Act is to absolutely control the liquor industry in the State of Ohio as a matter of social and public policy and that its purpose is not merely to provide fair competition between liquor distributors or retailers. This policy has been implemented through O.R.C. 4301.-041, 4301.13 and the regulations enacted pursuant to those statutes. Ohio has affirmatively expressed a policy to impose restraints on the pricing of beer and wine. Thus the first requirement for grant of state immunity is satisfied.

The State of Ohio has complied with the second prong of the *Midcal* test requiring active supervision of the policy by the State itself. The State's policy is carried out by creation of the Department of Liquor Control through extensive regulations. Formulas for determining prices have been established. Permits are required by anyone dealing in beer or wine which may be revoked after a hearing on the Commission's own initiative or on complaint of the department or any other person. (O.R.C. 4301.27). A permit may be suspended or revoked for any violation of the liquor control laws. (O.R.C. 4301.25). The rules and regulations are enforced by the Department of Liquor Control. It has the power to inspect upon demand books, records, accounts, and places of business of permit holders. (O.R.C. 4301.10). The department is required to hold four (4) public hearings annually for the purpose of hearing complaints as to its policies. (O.R.C. 4301.06). Ohio's statutory scheme itself establishes the clear articulation and active supervision requirements of *Midcal.* See *Hinshaw v. Beatrice Foods, Inc.,* 1980 CCH Trade cases ¶ 63,584 (D.Mont.1980). *Horsemen's Benevolent & Protective Association, Inc., v. Pennsylvania Horse Racing Commission,* 530 F.Supp. 1098 (E.D.Pa.1982).

Plaintiff contends in its motion for summary judgment that the Twenty First Amendment to the United States Constitution presents no bar to the application of the Sherman Act in this case. The Twenty First Amendment grants the states considerable regulatory power over matters relating to sales of liquor. *Seagram & Sons v. Hostetter,* 384 U.S. 35, 42, 86 S.Ct. 1254, 1259, 16 L.Ed.2d 336 (1966). When there has been no violation of the Sherman Act or the state has *Parker* immunity protection the Twenty First Amendment protects the states from federal intervention. *California Retail Dealers Association v. Midcal Aluminum,* supra. Therefore this issue need not be addressed. The Court agrees with defendant's assertion that the issues raised in defendant's motion for summary judgment are resolvable as matters of law and that factual questions as to the effect of Ohio's Statutes and Regulations regarding beer and wine prices would be relevant only if discussion of the Twenty First Amendment issue was needed.

The defendants assert that this action is barred by the Eleventh Amendment to the Constitution of the United States. The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced, or prosecuted against one of the citizens of another state, or by citizens or subjects of any foreign state."

Although the Eleventh Amendment does not specifically bar suits against the state by its own citizens the Supreme Court has held that an unconsenting state may not be sued by a private citizen when the liability imposed on it may be paid from the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment bars an action against the State and the named agency of the state. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978). While the Eleventh Amendment prohibits money damages against the state such prohibition does not extend to injunctive or declaratory relief against state officials that is not retrospective or monetary. *Quern v. Jordan* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Kimble v. Solomon,* 599 F.2d 599 (4th Cir.1979); *Morrow v. Bassman,* 515 F.Supp. 587 (S.D.Ohio 1981).

Plaintiff's complaint names the Ohio Department of Liquor Control and the Ohio Liquor Control Commission as defendants. It is argued by plaintiff that this suit is in reality against the members of the Department of Liquor Control and the Liquor Control Commission in their official capacity and these state officials will be subject to any order issued by this Court. In order to cure any defect by the omission of proper parties the plaintiff has moved to file an amended complaint adding the members of the defendant agencies. Since the Court has granted that motion defendants' Eleventh Amendment argument lacks merit.

Besides the addition of new parties to this action, plaintiff's amended complaint contains a new claim, jurisdiction of this Court being premised on pendent jurisdiction. Ohio Revised Code § 4301.43 imposed a tax on the sale or distribution of wine in Ohio at the rate of twenty-four cents (24 cents) per wine gallon for wine containing not less than seven (7%) percent alcohol by weight and not more than fourteen (14%) percent alcohol by volume, sixty (60 cents) per wine gallon for wine containing no more than fourteen (14%) percent but not more than twenty-one (21%) percent alcohol by volume, seventy-five (75 cents) per wine gallon for vermouth and one dollar twenty five ($1.25) per wine gallon for sparkling and carbonated wine and champagne, said tax to be paid by holders of A–2 and B–5 permits or by any other person selling or distributing wine upon which no tax has been paid. Ohio Revised Code § 4301.432, effective January 1, 1982, provided for levying of a tax on sale or distribution of vermouth, sparkling and carbonated wine, and champagne and other wine at the rate of two cents (2 cents) per wine gallon to be paid by A–2 and B–5 permit holders or any other person selling or distributing wine upon which no tax has been paid.

Plaintiff contends that defendants have caused the tax levied by ORC § 4301.43 and 4301.432 to be included in the minimum base cost of wine to be sold in Ohio. This tax exceeds the authority granted to defendants by ORC § 4301.13 and constitutes the imposition of a tax in violation of Article XII of the Constitution of Ohio. As a result of the unconstitutional levying of a tax, plaintiff is restricted in its trade and competition with other competitors in the wine market and is forced to pay taxes not levied by the legislature forcing plaintiff to pass on the tax to the general public, all to the damage and injury of plaintiff and the public interest.

■ The United States Supreme Court in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) held that pendent jurisdiction exists whenever there is a claim arising under the Constitution, laws of the United States, and treaties made, and the relationship between that claim and the state claim allows the conclusion that the entire action before the Court comprises but one constitutional case. In order for the Court to retain jurisdiction, the state and federal claims must derive from a common nucleus of operative fact, but considering the claims without regard to their federal or state character, the claims are such that they would ordinarily be expected to be tried in one case. Even if these elements are present, the power of a federal court to hear a state claim need not be exercised in every case. It is a matter within the Court's discretion. *Smith v. No. 2 Galesburgh Crown Finance Corp.,* 615 F.2d 407 (7th Cir.1980).

■ The 5th Circuit Court of Appeals determined factors to consider in exercising that discretion. *Tinker v. De Maria Porche-Audi, Inc.,* 632 F.2d 520 (5th Cir.1980). These are: whether the federal claims were dismissed before trial; whether the state claims predominate; whether the claims are closely tied to questions of federal policy; and whether the jury is likely to be confused by the treatment of the divergent legal theories of relief.

■ In applying these factors to the case at bar the Court concludes that it would be appropriate to decline jurisdiction over the state claim. In this case the federal anti-trust claims predominate over the state claim. The action is to be dismissed before trial on defendants' motion for summary judgment. Several courts have refused pendent jurisdiction when the federal claim has been disposed of on motions to dismiss or on summary judgment. See *Tinker v. De Maria Porche-Audi, Inc.,* supra, *Smith v. No. 2 Galesburgh Crown Finance Corp.,* supra, *Nash Associates, Inc., v. Lum's of Ohio,* 484 F.2d 392 (6th Cir.1973). The federal and state claims are not closely tied together. The anti-trust claim involved the question of whether the Ohio pricing scheme for beer and wine constitutes a resale price maintenance in contravention of the Sherman Act. The state claim concerned the authority of defendants to levy a tax to be included in the base price of wine in violation of the Constitution of Ohio. Two different legal theories are involved.

■ The Cleveland Wholesale Wine Dealers Association, Cuyahoga County Beer Distributors Association, Cuyahoga Tavern Keepers and Liquor Dealers Association, Spafford Beverage, and George Macauda & Sons d/b/a Chagrin Wine & Beverage Company have moved the Court to intervene as party defendants pursuant to Rule 24(a) or 24(b) of the Federal Rules of Civil Procedure. These parties represent the interest of small dealers in wine and beer, tavern keepers, or small scale competitors of Fisher Foods. They assert that they are directly affected by the regulations promulgated by the Ohio Department of Liquor Control and the Ohio Liquor Control Commission. The Regulations were enacted to protect small business enterprises and to ensure their continued vitality and enhance real competition in the area of wholesale and retail distribution of wine and beer. They have a crucial economic interest in the continued enforcement of the regulations, which serve as the only guarantee of their vitality and that of the competitive market in which they operate.

Rule 24(a) provides:

"Upon timely application anyone shall be permitted to intervene in an action: (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The applicants have asserted an economic interest in this action with the claim that the Regulations in question were enacted to protect small businesses. Examination of Regulation 4301:1–1–03 does not support this argument.

Regulation 4301:1–1–03(G) states:

"This article is promulgated pursuant to the provisions of § 6064–3A of the General Code (ORC 4301.13) to avoid economic and social consequences which flow from unfair competition and improper practices in the sale and distribution of alcoholic beverages. It is hereby declared to be the policy and interest of the Commission in promulgating this article to advance the social control of an alcoholic beverage and to stabilize the sale and distribution of bottled wine in Ohio. It is intended to eliminate practices in the sale and distribution of wines in Ohio which cause intemperance and improper usage of bottled wines."

Regulation 4301:1–1–72 pertaining to beer is somewhat similar. Neither mentions small business enterprises. Therefore the regulations must have been meant to apply to all businesses dealing in the sale and distribution of wine and beer. The applicants' interest is a general economic interest, the same as every seller and distributor. Small businesses have no special interest greater than large businesses.

Economic consequences to applicants are irrelevant to whether or not the regulations violate the Sherman Act. In *California Retail Liquor Dealers' Associations v. Midcal Aluminum,* supra, the Supreme Court considered the state of California's expressed interest in temperance and protection of small businesses. *Rice v. Alcoholic Beverages Control Appeals Board,* supra, reviewed in *Midcal,* contained a discussion of the impact of resale price maintenance on the economic survival of small retailers. It was concluded that fair trade laws did not protect small businesses. The Court in *Midcal* agreed with the California court in *Rice* and found nothing in the record in *Midcal* to suggest that a wine pricing system helps sustain small retail establishments. Even if Ohio's beer and wine pricing scheme is intended to support small businesses there is nothing before the Court showing that the regulations further this intention.

The applicants must show that their interest is not adequately represented by the existing parties. It is contended that inadequacy of representation is established because the applicant's interest in the case and the reasons for supporting the validity of the regulations are different from the state and if allowed to intervene they will present claims, defenses, and evidence that the government may not be able to raise and may at times be adverse to the government's interest. The applicants state that their arguments will pertain to the reasons why the regulations are essential to the survival of small competitors. However this evidence is irrelevant for purposes of deciding whether the regulations violate anti-trust laws. Their arguments as to the validity of the regulations in relation to the prohibitions of the Sherman Act can be handled by attorneys for the present defendants. There has been no suggestion by applicants of any dispute between them and the members of the Liquor Control Commission or the Ohio Department of Liquor Control. See *Penick v. Columbus Education Association,* 574 F.2d 889 (6th Cir.1978).

Although the application to intervene was timely filed the applicants have not shown a legally cognizable interest in the subject matter of this lawsuit nor have they shown that their interest will not be adequately protected by the present defendants. Therefore the motion to intervene as a matter of right is denied.

■ Permissive intervention has been allowed when an intervenor has an econom-

ic interest in the suit. *Chalmers v. United States,* 43 F.R.D. 286 (D.Kan.1967). But even though a common question of law or fact exists it is still within the discretion of the Court whether to allow intervention and intervention will frequently be denied if collateral or extrinsic issues would be brought in. *Leech Lake Area Citizens Committee v. Leech Lake Band of Chippewa Indians,* 486 F.2d 888 (8th Cir.1973). Interjection of facts concerning the applicants economic situation would cloud the issues having no relevance to the ultimate anti-trust issue before the Court. Since the other issues contained in the intervenors' proposed answer have been raised or could be raised by the defendants, the Court would be hearing repetitious arguments taking additional time. Additional parties are sources of additional witnesses, questions, objections, briefs, arguments, and motions. "Where it presents no new questions a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Crosby Steam Gauge & Valve Co., v. Manning, Maxwell & Moore, Inc.* 51 F.Supp. 972, 973 (D.Mass.1943). The Court in *Commonwealth of Virginia v. Westinghouse Electric Corp.,* 542 F.2d 214 (4th Cir. 1976) stated:

> "The resultant complexity of the litigation, combined with the increases in cost and judicial time, would hinder resolution of the present conflict. The trial court, deluged with additional briefs and pleadings, would be provided with no new viewpoints and little if any illumination to the original Westinghouse contracts dispute." *Id.* pg. 217.

For the same reasons this Court, in its discretion denies applicant's motion to intervene.

Accordingly, it is the judgment of this Court that plaintiff's motion for summary judgment be denied; defendants' motion for summary judgment is granted. The Court declines jurisdiction over the state issues presented in the amended complaint. The motion of the Cleveland Wholesale Wine Dealers' Association, Cuyahoga County Beer Distributors Association, Cuyahoga Tavern Keepers and Liquor Dealers Association, Spafford Beverages, and George Macauda & Sons d/b/a Chagrin Wine & Beverage Co., to intervene is denied.

IT IS SO ORDERED.