**UNITED STATES FOOTBALL LEAGUE, et al., Plaintiffs,**

v.

**NATIONAL FOOTBALL LEAGUE, et al., Defendants.**

**No. 84 Civ. 8474 (PKL).**

United States District Court,
S.D. New York.

April 30, 1986.

Gadsby & Hannah, New York City, for plaintiff-intervenor.

Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey, Spengler Carlson Gubar Brodsky & Frischling, New York City, for plaintiffs.

Davis Polk & Wardwell, Skadden, Arps, Slate, Meagher & Flom, New York City, Covington & Burling, Washington, D.C., for defendants.

### OPINION # 6

LEISURE, District Judge:

The New Orleans Breakers Football Club Limited Partnership ("NOB") has moved to intervene in this action as a plaintiff pursu-

---

**1.** The reader's familiarity with the underlying facts of this action, *USFL v. NFL,* 84 Civ. 7484 (PKL), is assumed. Plaintiffs herein will be referred to collectively as the "USFL." Defendants herein will be referred to collectively as the "NFL."

**2.** *See* Plaintiff's Memorandum of Law in Opposition to Motion to Intervene, Exhibit C (asset purchase agreement). In contrast, the NOB avers that only $2,000,000 of the purchase price

ant to Fed.R.Civ.P. 24(b).[1] For the reasons stated herein, that application is denied.

### Factual Background

The NOB, originally organized as the Boston USFL Limited Partnership, was a charter member of the USFL, operating as the league's "Boston Breakers" franchise during the 1983 season. On December 7, 1983, the NOB sold its entire interest in the "Breakers" franchise to another limited partnership, the New Orleans Breakers Limited Partnership ("BLP"). Under the ownership of the BLP, the Breakers played their 1984 season in New Orleans, and their 1985 season in Portland. The BLP, as owner of the USFL franchise now known as the Portland Breakers, is one of the plaintiffs in the antitrust suit presently before this Court. *See* Plaintiffs' First Amended Complaint ¶ 5.

Under the terms of the 1983 asset purchase agreement ("1983 agreement") between the NOB and the BLP, the BLP agreed to pay the NOB eight million dollars ($8,000,000) for the purchase of the latter's assets, of which two and one-half million dollars ($2,500,000) was payable in cash and the rest was secured by notes.[2]

Shortly after the Breakers were sold, the 1983 agreement became the subject of an ongoing dispute between the NOB and the BLP that has led directly to two lawsuits and indirectly to another. On August 22, 1984, the NOB sued both the USFL and the BLP in this Court for payments allegedly due and owing to the NOB under the terms of the 1983 agreement. That action, *New Orleans Breakers Football Club Limited Partnership v. United States Football League,* 84 Civ. 6023 (VLB), is still pending before the Honorable Vincent L. Broderick,

---

was payable in cash. *See* Affidavit of George J. Matthews ¶ 3. Although the exact amount of the BLP's cash obligation is of no consequence to this Court's decision on the NOB's motion to intervene, the disparity between the USFL's estimation of that amount and plaintiff-intervenor's is indicative of the sort of collateral dispute with which this Court could become embroiled if the NOB's motion were granted.

United States District Judge of the Southern District of New York. In addition, the BLP has filed suit against the NOB and others in Louisiana state court, charging the NOB and its general partner with having made misrepresentations and false warranties regarding the financial condition of the Breakers franchise in order to induce the BLP to buy the team from the NOB.[3]

It is apparent that the NOB and the BLP have sharply divergent views regarding their respective obligations under the 1983 agreement. The BLP's action in Louisiana state court is premised, in part, on its conviction that the NOB materially misrepresented its projected net loss for fiscal year 1984, underestimating it by nearly four million dollars. *See* Petition, *New Orleans Breakers Limited Partnership v. New Orleans Breakers Football Limited Partnership,* No. 299–764 (La. 24th J.Dist.Ct.) at 3. In contrast, the NOB is not only suing the BLP for amounts allegedly due and owing under the 1983 agreement, but has also sent correspondence to the BLP, demanding that the Breakers franchise be returned to the NOB because of the BLP's failure to honor a promissory note that became due and payable to the NOB on November 30, 1985.

On May 30, 1985, approximately seven months after the original complaint was filed in the instant case,[4] NFL counsel for the NFL received a phone call from counsel for George Matthews ("Matthews"), the general partner of the NOB, inquiring as to the NFL's likely position with regard to Matthews' possible intervention as a plaintiff in *USFL v. NFL.* In the ensuing discussion, Matthews' counsel (also counsel for the NOB) was told of the October 31, 1985 discovery cutoff date then in effect, and was also told that the NFL would "get

back to him" with its position on Matthews' possible intervention.

At about the same time, the USFL announced its opposition to the stipulated addition of the NOB as a plaintiff. As a result, the NOB began considering a formal motion to intervene. The NOB's thoughts were not translated into actions, however, until nearly five months later, when, in late October, the NOB informed this Court of its intent to intervene. A formal notice of motion to intervene under Rule 24(b) was filed in early December 1985.

By December 1985, however, factual discovery in this case was nearly complete. In the four months from the inception of deposition discovery in late July, plaintiffs and defendants had together taken over forty depositions comprising more than eighty days of testimony. Over two thousand documents had been marked as exhibits. Indeed, given the inevitable complexity of an antitrust action in which plaintiffs seek over one billion dollars in damages, when trebled, the parties to this litigation have proceeded with discovery at a remarkably accelerated pace. The primary reason for this intensified effort is that both plaintiffs and defendants desire that this case go to trial at the earliest practicable date. The NFL wants an early trial because it wants the question of its potential liability resolved as soon as possible. The USFL wants an early trial because, as it has stated on numerous occasions, any and all delays in this case threaten the USFL's very existence as a professional sports league. At present, the trial in this action is scheduled to commence on May 12, 1986.

In moving to intervene, the NOB has demonstrated some awareness of the existing parties' aversion to delay by expressing its willingness to adopt the existing com-

---

**3.** On January 4, 1985, George Matthews, the NOB's general partner, brought suit against the USFL and two named individuals in New York state court seeking six million dollars ($6,000,-000) in compensatory and punitive damages for alleged defamation arising from an attempt by the USFL's former commissioner to draw down on a letter of credit issued in the USFL's favor by the NOB. That action has been dismissed.

*See Matthews v. Simmons,* Index No. 2806–85, slip op. (Sup.Ct.N.Y.Co. May 28, 1985).

**4.** Plaintiffs originally filed a complaint in this action on October 17, 1984. Plaintiffs' First Amended Complaint was filed in late May of 1985.

plaint and to be bound by all past deposition testimony. The NOB has also agreed to seek no discovery in addition to that sought by plaintiffs' lead counsel.

To date, however, defendants have conducted only limited discovery of the NOB. In May 1985, the NFL served a subpoena duces tecum on George Matthews, as part of defendants' efforts to gather documentary evidence from non-party former owners of USFL franchises. Although Matthews produced certain documents in response to the subpoena, no actual testimony was taken or sought by the NFL.

### Discussion of Law

A party moving for permissive intervention must establish the possession of a claim or defense raising "a question of law or fact in common" with the main action. Fed.R.Civ.P. 24(b)(2). The movant's application must be "timely," *id.*, and should not be granted where it is determined that "intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.; see United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978).

■ A motion for permissive intervention is addressed to the broad discretion of the district court. *See Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 876 (2d Cir. 1984); *Sierra Club v. United States Army Corps of Engineers*, 709 F.2d 175, 177 (2d Cir.1983); *United States Postal Service v. Brennan*, 579 F.2d at 191. In addition to the criteria expressly mentioned in Rule 24(b)(2), the trial court may also consider other relevant factors, including: 1) the nature and extent of the intervenor's interests; 2) whether those interests are adequately represented by the existing parties; and 3) whether granting permission to intervene will contribute significantly to a full development of the underlying factual issues at trial and, ultimately, to a just and equitable adjudication of the legal questions presented. *See Brennan*, 579 F.2d at 191–92 (citation omitted).

■ Having reviewed the relevant law in this area, the Court sees little point in belaboring its analysis. Although the NOB has established the existence of a common question of law or fact, its application is simply not timely. Intervention at this point in the proceedings, even by a party willing to adopt the existing pleadings, would unduly delay the proceedings and would prejudice the adjudication of the rights of the original parties. This is especially true because intervention by the NOB would inevitably introduce the issue of true ownership of the Breakers franchise. *See Fisher Foods, Inc. v. Ohio Dep't of Liquor Control*, 555 F.Supp. 641, 651 (N.D.Ohio 1982) (motion for permissive intervention will frequently be denied, notwithstanding the existence of a common question of law or fact, if intervention would lead to the introduction of collateral or extrinsic issues).

The ongoing legal disputes between the NOB and the BLP demonstrate the NOB's ability to protect its legal rights adequately in other forums without being granted leave to intervene in the present action. *See* 7A Wright & Miller, *Federal Practice & Procedure: Civil* § 1913 at 555. Moreover, the NOB will suffer no cognizable prejudice if forced to observe the instant action from the sidelines. The NOB's interests are more than adequately represented by the existing plaintiffs, who are themselves represented by exceptionally able counsel. Even if plaintiffs fail to establish defendants' liability in this lawsuit, such a judgment would, in all likelihood, not bind the NOB in a future proceeding. *Id.* § 1913 at 556.

### Conclusion

The application of the New Orleans Breakers Football Club Limited Partnership for leave to intervene pursuant to Fed. R.Civ.P. 24(b)(2) is denied.

SO ORDERED.