DECISION AND JUDGMENT ENTRY
The Ohio State University Hospital (OSUH) appeals from an order denying its motion to intervene in the Lawrence County Probate Court proceedings to distribute assets from the estate of Georgia McMullen. We must decide whether the probate court abused its discretion when it ruled that a state entity tortfeasor has no mandatory or permissive right to intervene in the distribution of proceeds to the estate's beneficiaries. OSUH argues that it should be allowed to intervene because distribution among the beneficiaries ultimately affects the extent of its statutory right to setoff for collateral source benefits. The estate contends that the right of setoff does not arise in probate court. Rather, the state argues, only if the probate court's distribution creates a double recovery, does the Court of Claims apply the statutory setoff in a separate proceeding. Thus, the estate contends that OSUH has no interest to protect in the probate court proceedings. Because the probate court's adoption of the estate's position is not unreasonable, unconscionable or arbitrary, we must affirm it.
The Ohio Court of Claims determined that OSUH was liable to the estate of Georgia McMullen for her wrongful death. In accordance with the Ohio Supreme Court's mandate in McMullen v. Ohio State Univ. Hosp.,88 Ohio St.3d 332, 2000-Ohio-342, 725 N.E.2d 1117, the Court of Claims ultimately transferred the case back to the Lawrence County Probate Court for distribution of the $250,000 damage award.[1] OSUH then filed a motion to intervene under Civ.R. 24, accompanied by a complaint for declaratory judgment. The Lawrence County Probate Court denied the motion to intervene, and OSUH appealed.
OSUH assigns two errors for our review:
FIRST ASSIGNMENT OF ERROR
 THE PROBATE COURT OF LAWRENCE COUNTY ERRED WHEN IT DENIED THE OHIO STATE UNIVERSITY HOSPITALS' MOTION TO INTERVENE AS OF RIGHT PURSUANT TO RULE 24(A)(2) OF THE OHIO RULES OF CIVIL PROCEDURE.
 SECOND ASSIGNMENT OF ERROR
 THE PROBATE COURT OF LAWRENCE COUNTY ERRED WHEN IT DENIED THE OHIO STATE UNIVERSITY HOSPITALS' MOTION FOR PERMISSIVE INTERVENTION PURSUANT TO RULE 24(B) OF THE OHIO RULES OF CIVIL PROCEDURE.
A decision on a motion to intervene is a matter committed to the sound discretion of the trial court. See State ex rel. First New Shiloh BaptistChurch v. Meagher, 82 Ohio St.3d 501, 502, 1998-Ohio-192, 696 N.E.2d 1058, citing S. Ohio Coal Co. v. Kidney (1995), 100 Ohio App.3d 661, 672,654 N.E.2d 1017. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Wilmington Steel Products,Inc. v. Cleveland Elec. Illum. Co. (1991), 60 Ohio St.3d 120, 122,573 N.E.2d 622. In a prior decision involving this appeal, we exercised a somewhat less deferential standard of review than the "traditional" abuse of discretion standard. See In re Estate of McMullen, Lawrence App. No. 00CA27, 2001-Ohio-2534. In essence we held that the failure of the probate court to provide us with a rationale for its decision left us with no way to perform an effective appellate review. The probate court has complied with our mandate and provided its rationale. The word "shall" in Civ.R. 24(A) requires a court to allow intervention when the enumerated factor(s) are present. However, in determining the existence of those factors, the probate court retains a large degree of discretion because it is operating in a supervisory role. It is clearly in a better position to do so than this court. Accordingly, we apply the traditional abuse of discretion standard in this context.
OSUH claims the right to intervene in the probate court proceedings under Civ.R. 24(A), which states:
 (A)Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:
* * *
 (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
Our analysis focuses on OSUH's claimed interest since it is determinative. We conclude that the probate court did not abuse its discretion in finding that OSUH does not have a sufficient interest relating to either the property or the transaction so as to mandate its intervention in that court's proceedings.
The claimed interest in this case is the statutory right to setoff under R.C. 3345.40(B)(2).[2] The purpose of the right to setoff collateral source benefits is to prevent double recovery. McMullen,88 Ohio St.3d at 344. Where a double recovery would result, a state university tortfeasor has a right to "match" the collateral source benefits to the damage award and setoff its obligation to the injured parties to the extent of their collateral source benefits. Id.; Buchmanv. Wayne Trace Local School Dist. Bd. of Ed., 73 Ohio St.3d 260, 269,1995-Ohio-136, 652 N.E.2d 952; Sorrell v. Thevenir, 69 Ohio St.3d 415,423-24, 1994-Ohio-38, 633 N.E.2d 504. Ordinarily, setoff is not an issue that properly concerns the probate court. An equitable distribution of damages to the beneficiaries according to their respective injury or loss is the sole issue that confronts the probate court. R.C.2125.03(A)(1)[3]. See, also, McMullen, 88 Ohio St.3d at 342. OSUH is in no position to offer relevant evidence on that issue. It can only present evidence that will be a basis for maximizing its right to setoff. This is not an issue the probate court may address. Id. Thus, OSUH's interest in intervening is restricted to seeing that another court, i.e., the Court of Claims, applies its statutory right to setoff. Id. This interest is too remote to be the subject of intervention in the probate court proceedings as of right under Civ.R. 24(A).
OSUH claims that it is effectively denied its right to statutory setoff if it is prevented from introducing evidence concerning how much total damage each beneficiary suffered. This is so, it argues because a "creative" distribution could reduce the value of the setoffs to practically zero. However, the right of setoff under R.C. 3345.40(B)(2) does not give OSUH an entitlement to be involved in the determination of the distribution of the wrongful death proceeds. Under R.C. 2125.03(A)(1), the personal representative has the sole responsibility to distribute the Court of Claims damage award as ordered by the probate court. The statute does not provide for a defendant in the underlying wrongful death action to have any role in the probate court proceedings. See Weidner v. Rankin
(1875), 26 Ohio St. 522, paragraph two of the syllabus (in a case involving tort action proceeds the Court stated "[t]he risk of ascertaining the persons entitled to the benefit of the recovery, and the duty of making the distribution, are not imposed on the defendant, but on the personal representative of the deceased.").
Moreover, we conclude that the statutory right to setoff collateral source benefits cannot accrue until distribution has been accomplished in the probate court. There has to be a double recovery before the statutory setoff rights come into play. This makes the setoff right a contingent interest that may or may not accrue, depending on how the wrongful death proceeds are distributed among the beneficiaries. OSUH contends the fact that will determine whether it has the right to setoff is "whether * * * these beneficiaries have received collateral benefits * * *." It is mistaken in this assessment. The determinative fact is the existence of a double recovery. McMullen, 88 Ohio St.3d at 344. OSUH's right of setoff does not accrue when a beneficiary receives a collateral benefit. It only accrues when the coincidence of that collateral benefit and a distribution from the estate creates a double recovery. Id.
OSUH's intervention in the probate court proceedings would paradoxically result in OSUH arguing for a distribution that would produce a double recovery for beneficiaries so that it can assert a statutory right intended to prevent double recovery. This would allow the state to take a position that is contrary to R.C. 3345.40(B)(2)'s presumed goal, which is to eliminate or prevent double recovery. Id.
Moreover, if OSUH were permitted to intervene in this proceeding based on its statutory right to offset collateral source benefits, then it would presumably have a similar right to intervene in an action between the estate and one of the collateral sources so that it could argue in favor of the award on behalf of the beneficiaries. For instance, could OSUH intervene in a declaratory judgment action by the estate to determine a question of life insurance coverage? OSUH's interest would be no less attenuated in those cases. We do not believe that the General Assembly intended the setoff provision in R.C. 3345.40(B)(2) to be asserted in such a manner. If the legislature had intended for a state university tortfeasor to be involved in the distribution of the wrongful death proceeds, it could have included the statutory right of intervention in R.C. 3345.40(B)(2). It chose not to do so.
OSUH also contends that intervention is appropriate because the statutory right to setoff makes this fact pattern unique; while normal tortfeasors have no interest in the probate court's distribution proceedings, the statutory right to setoff creates just such an interest in the state. Unfortunately for OSUH, when the legislature created the state's unique right to setoff to prevent double recovery, it did not create a unique mechanism to implement that right. Thus, left to common law procedural rules and concepts of standing, the state stands in the same shoes as any other tortfeasor when it comes to the probate court's distribution of assets to the beneficiaries of the estate.
OSUH's liability for the wrongful death of Georgia McMullen has already been determined in the Court of Claims. At best, OSUH's claim to the property that is the subject of the probate action, i.e., the $250,000 damage award, is attenuated. Moreover, OSUH does not have an interest in the transaction in the probate court, other than its incidental effect tocreate a right of setoff. This is an indirect, contingent interest in the transaction, and is insufficient to sustain a right to intervene under Civ.R. 24(A). See Fink, Greenbaum Wilson, Guide to the Ohio Rules ofCivil Procedure (2000), 520 (stating that at a minimum, a person seeking to intervene as of right under Civ.R. 24(A)(2) must have a direct interest in the subject matter of the litigation, rather than an indirect or contingent interest).
Furthermore, OSUH's participation would only serve to cloud the issues before the probate court. We do not see how OSUH's presence in the distribution proceedings would add anything to that determination since the probate court has no jurisdiction to apply statutory setoffs, which is OSUH's only real concern in the distribution among the beneficiaries. Moreover, intervention might significantly complicate the probate court proceedings with the introduction of irrelevant argument and extrinsic evidence. See, generally, Fisher Foods, Inc. v. Ohio Dept. of LiquorControl (N.D.Ohio. 1982), 555 F. Supp. 641, 650.
Based on the foregoing analysis, the highly deferential standard of review that applies to this case prevents us from concluding that the probate court abused its discretion in denying OSUH's motion for intervention as of right. Under the abuse of discretion standard, our focus is more upon the process the trial court used to reach its decision, than upon the merits of the decision. Where the trial court is cloaked with discretionary power it need not be "right" in our eyes to be upheld. Even where we disagree with the trial court's decision, we are required to defer to its discretion so long as it was properly exercised. OSUH's first assignment of error is overruled.
As for OSUH's claim that it should have been granted permissive intervention, we turn to Civ.R. 24(B)(2), which states, in part:
 (B)Permissive intervention. Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
The common question asserted by OSUH is: "how much of the total damages is each beneficiary entitled to?" Again, this is not an issue that OSUH has any right to determine, even though it will indirectly effect a contingent statutory interest. We conclude that our review is even more deferential under permissive intervention than so called mandatory intervention. Since OSUH's claim failed to present a common question of law or fact with the probate court proceedings, the probate court did not abuse its discretion in denying OSUH's motion for permissive intervention under Civ.R. 24(B)(2). OSUH's second assignment of error is overruled.
Having found the assignments of error to be meritless, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.
 APPENDIX
In July 1990, Georgia McMullen underwent a bone marrow transplant at the OSUH as part of her medical treatment for leukemia. Afterward, she experienced high fevers and a possible viral infection. She eventually developed breathing problems and elected to be placed on a ventilator system. In October 1990, as a result of certain complications with her ventilator system, Mrs. McMullen lapsed into a coma. She died on October 31, 1990.
Phillip McMullen, individually and as executor of the estate of Georgia McMullen, brought a wrongful death claim against OSUH in the Ohio Court of Claims. The Court of Claims found OSUH liable and entered judgment in favor of the survivors in the amount of $250,000, subject to the right of setoff under R.C. 3345.40(B)(2) for collateral source benefits. The case was then transferred to the Lawrence County Probate Court for allocation of the $250,000 judgment award among the survivors, taking into account the collateral source benefit reduction.
The Lawrence County Probate Court divided the award among four beneficiaries, which included the decedent's mother, husband, and two children. The court allocated $245,000 to the decedent's mother; and divided the remaining $5,000 among the decedent's husband and two children. The probate court determined that the decedent's mother did not receive any collateral source benefits; therefore, setoff did not apply to her award. However, since the decedent's husband and two children did receive collateral source benefits, their $5,000 collective award was reduced to zero. The case was transferred back to the Court of Claims, which adopted the probate court findings and rendered final judgment for the executor in the amount of $245,000.
OSUH appealed the Court of Claims decision to the Tenth District Court of Appeals challenging, among other things, the Court of Claims's referral of the allocation of damages to the Lawrence County Probate Court. OSUH also contested the Court of Claims's authority to adopt the decision of the probate court after it had allocated the damages and applied the setoffs. See McMullen v. Ohio State Univ. Hosp. (Sept. 22, 1998), Franklin App. Nos. 97API10-1301 and 97API10-1324. The Tenth District sustained OSUH's assignment of error and remanded to the Court of Claims with instructions to enter a revised judgment award, which calculated and deducted the collateral source benefits for each beneficiary before transfer to the Lawrence County Probate Court. Id. The Tenth District reasoned that the statutory setoff rights conferred an entitlement that must be litigated in the Court of Claims and that the Lawrence County Probate Court did not have jurisdiction to, in effect, modify a judgment award from the Court of Claims.
However, the Ohio Supreme Court reversed the Tenth District. SeeMcMullen v. Ohio State Univ. Hosp., 88 Ohio St.3d 332, 2000-Ohio-342,725 N.E.2d 1117. The Supreme Court agreed with the Tenth District that the Court of Claims had original jurisdiction to determine the deduction of collateral source benefits under R.C. 3345.40(B)(2). However, the Supreme Court found that the Court of Claims could only exercise its jurisdiction to determine the setoff for collateral source benefitsafter the probate court had allocated the aggregate award among the beneficiaries under R.C. 2125.03(A)(1). As a matter of due process, the Supreme Court pointed out that applying setoffs before distribution could arbitrarily reduce one beneficiary's award by another beneficiary's collateral source benefits. McMullen, 88 Ohio St.3d at 343, citingBuchman v. Wayne Trace Local School Dist. Bd. of Ed.,, 73 Ohio St.3d 260,268, 1995-Ohio-136, 652 N.E.2d 952; Sorrell v. Thevenir, 69 Ohio St.3d 415,423-24, 1994-Ohio-38, 633 N.E.2d 504. The Court made it clear that it would be improper to allow one party's recovery to be reduced by another person's collateral source benefits. McMullen, 88 Ohio St.3d at 343. The Court also stated that reduction of collateral source benefits before distribution would cause the setoff statute to operate contrary to its presumed goal, which is to eliminate or prevent double recovery. Id. at 344. The Supreme Court remanded the case to the Court of Claims.
[1] See the Appendix for a more detailed statement of the case.
[2] {¶ a} R.C. 3345.40(B)(2) states:
 {¶ b} (B) Notwithstanding any other provision of the Revised Code or rules of a court to the contrary, in an action against a state university or college to recover damages for injury, death, or loss to persons or property caused by an act or omission of the state university or college itself, by an act or omission of any trustee, officer, or employee of the state university or college while acting within the scope of his employment or official responsibilities, or by an act or omission of any other person authorized to act on behalf of the state university or college that occurred while he was engaged in activities at the request or direction, or for the benefit, of the state university or college, the following rules shall apply: * * *
 (2) If a plaintiff receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against the state university or college recovered by the plaintiff. No insurer or other person is entitled to bring a civil action under a subrogation provision in an insurance or other contract against a state university or college with respect to such benefits.
Nothing in this division affects or shall be construed to limit the rights of a beneficiary under a life insurance policy or the rights of sureties under fidelity or surety bonds.
[3] {¶ a} R.C. 2125.03(A)(1) states:
 {¶ b} (A)(1) The amount received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them. The court that appointed the personal representative, except when all of the beneficiaries are on an equal degree of consanguinity to the deceased person, shall adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries. If all of the beneficiaries are on an equal degree of consanguinity to the deceased person, the beneficiaries may adjust the share of each beneficiary among themselves. If the beneficiaries do not adjust their shares among themselves, the court shall adjust the share of each beneficiary in the same manner as the court adjusts the shares of beneficiaries who are not on an equal degree of consanguinity to the deceased person.