Richard BAKER, Jr. and Charlene S. Baker, Plaintiffs-Appellees,

v.

GOLDBLATT, Defendant-Appellant.

No. 91–3508.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 19, 1991.

Decided Jan. 30, 1992.

Robert N. Gluck, Wooster, Ohio (argued and briefed), for plaintiffs-appellees.

Neil E. Roberts, Cleveland, Ohio (argued and briefed), for defendant-appellant.

Before KENNEDY and BOGGS, Circuit Judges; and EDGAR, District Judge.*

BOGGS, Circuit Judge.

Richard and Charlene Baker filed this product liability suit against appellant Goldblatt, a wholly owned subsidiary of AXIA, Inc., for personal injuries resulting from the collapse of an elevated stilt manufactured by Goldblatt. On March 29, 1991, the jury returned a verdict for the Bakers in the amount of $278,356.37. The verdict was composed of $78,356.37 in past damages and $175,000 in future damages to Mr. Baker, and $25,000 to Mrs. Baker for loss of consortium. Under its interpretation of Ohio Revised Code § 2317.45, the district court declined to reduce the verdict pursuant to the Ohio statute in light of collateral benefits received by Mr. Baker as a result of the injury. For the reasons set forth below, we hold that the district court's reading of the Ohio statute is mistaken. We therefore reverse and remand this case to the district court for a recalculation of the statutory adjustment of the jury's compensatory damages award consistent with this opinion.

## I

Mr. Baker sustained his injuries in the course of his employment with the Campbell Construction Company. As a result, Mr. Baker has received and will receive payments from the Ohio's Workers' Compensation fund. Baker also received unemployment compensation.

The issues in this appeal arise out of the district court's post-verdict adjustment of the jury's compensatory damages award, pursuant to its interpretation of O.R.C. § 2317.45. Section 2317.45 defines several categories of "collateral benefits" and requires that damage awards be offset, in certain circumstances, by collateral benefits received by the plaintiff as a result of the injury at issue. The workers' compensation and unemployment payments received by Baker constitute collateral benefits under O.R.C. § 2317.45(A)(1)(a). Under the statutory framework, however, the amount of collateral benefits used to offset the damage award is itself reduced by the costs incurred to secure those benefits, such as insurance premiums, during the three years preceding the injury. O.R.C. § 2317.45(B). The Ohio law achieves this result through a two-step calculation. O.R.C. § 2317.45(B)(2)(c). First, the law requires the trial judge to subtract any defined collateral benefits from the jury award won by the plaintiff. O.R.C. § 2317.45(B)(2)(c)(i). Next, the judge must add to the balance the amount of any costs or premiums paid to secure the collateral benefits received. O.R.C. § 2317.-45(B)(2)(c)(ii). The statute mandates that the amount of premiums added back into this calculation may not exceed the amount of collateral benefits subtracted from the compensatory damages award. *Ibid.* In other words, the most that a plaintiff can receive after the statutory adjustment is the full amount of the jury award.

In this case, the district court concluded that Mr. Baker received collateral benefits of $85,210.91 as a result of his injuries. The main issue in this case concerns the amount to be added back into the calculation for the cost of those collateral benefits. The amount of the "add-back," ac-

* The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation.

cording to the Ohio statute, is the amount of any premiums paid to secure "such benefits." O.R.C. § 2317.45(B)(2)(b). The district court determined that the statute required the *total* amount of the workers' compensation premiums paid by Campbell Construction for its entire workforce to be added back into the computation of Baker's adjusted damages. Since Campbell Construction paid $107,276.54 in total workers' compensation premiums during the three years prior to Mr. Baker's injury, the $85,-210.91 in collateral benefits received by Baker was more than completely offset and there was, therefore, no reduction of the jury's damage award under the district court's interpretation of O.R.C. § 2317.-45(B)(2)(b).

Goldblatt appeals, contending that under the proper interpretation of the Ohio statute, the collateral benefits received by Baker must be offset by only the amount of workers' compensation premiums that the company paid on behalf of Baker individually, and not by the total amount of premiums paid for all of the construction company's workers. This interpretation would most likely require a reduction in the jury award pursuant to O.R.C. § 2317.45. Goldblatt also contests the district court's calculation of Baker's collateral benefits, claiming that the district court understated the amount of workers' compensation benefits that Baker would receive in the future as a result of his injury.

## II

By its plain language, O.R.C. § 2317.45 requires courts to adjust a compensatory damages award by first subtracting from the award any collateral benefits received by the plaintiff and then adding back only the amount of the premiums paid to secure "such benefits." In this case, then, Mr. Baker's workers' compensation award should be offset only by the premiums paid by Campbell Construction for Mr. Baker individually, and not by the total workers' compensation premiums paid by the company. This holding will necessitate a recalculation of the collateral benefits adjustment of the jury award, consistent with this

court's interpretation of O.R.C. § 2317.45. We therefore remand this case to the district court. We express no opinion, however, with regard to the technicalities or method of the calculation to be undertaken to determine what portion of Campbell Construction's total workers' compensation premiums can be attributed to coverage of Mr. Baker individually.

As discussed, O.R.C. § 2317.45 defines several types of "collateral benefits" and requires that damage awards be offset by any collateral benefits covering the injury at issue. After collateral benefits are subtracted from the damage award, the premiums paid over the three years prior to the injury to secure the collateral benefits must be added to the balance. Section 2317.45 provides, in relevant part:

(B)(1) Except as provided in division (C) of this section, if a plaintiff in a tort action is entitled to an award of compensatory damages, that plaintiff shall disclose to the court after such entitlement is determined all relevant collateral benefits, and the costs, premiums, or charges for any disclosed collateral benefits paid or contributed within the three-year period immediately preceding the accrual of the cause of action, by the plaintiff, any member of his immediate family, or the employer of the plaintiff or any member of his immediate family....

(2) Upon disclosure required by division (B)(1) of this section, the court shall do all of the following:

(a) Determine whether both of the following are satisfied in relation to any of the disclosed collateral benefits:

(i) The plaintiff has received the disclosed collateral benefit or is reasonably certain to receive it within the next sixty months after the entry of judgment;

(ii) There are no rights of recoupment respecting the disclosed collateral benefit.

(b) As to any disclosed collateral benefits in relation to which both requirements of division (B)(2)(a) of this section are satisfied, determine the total of the costs, premiums, or charges for such benefits paid or contributed within the

three-year period immediately preceding the accrual of the cause of action, by the plaintiff, any member of his immediate family, or the employer of the plaintiff or any member of his immediate family....

(c) Prior to entering judgment for the plaintiff do both of the following:

(i) Subtract from the compensatory damages that the plaintiff otherwise would be awarded the amount of any disclosed collateral benefits in relation to which both requirements of division (B)(2)(a) of this section are satisfied.

(ii) Subject to the limitation specified in this division, add to the balance derived under division (B)(2)(c)(i) of this section the total of any costs, premiums, and charges described in division B(2)(b) of this section. The amount of those costs, premiums, and charges that is added to that balance shall not exceed any amount subtracted pursuant to division (B)(2)(c)(i) of this section from the compensatory damages that the plaintiff otherwise would be awarded.

On April 30, 1991, the district court held an evidentiary hearing to determine by what amount, if any, the verdict would be reduced pursuant to § 2317.45. Mr. Baker testified that he was receiving $97.33 per week from workers' compensation and would continue to receive that amount for four years. Baker also testified that he would receive unemployment benefits of $582 every two weeks for a period of 26 weeks. It was agreed that Baker had already received $31,068.58 in medical benefits through workers' compensation and $26,331.69 in past wages.

The district court calculated the plaintiff's total medical and wage benefits from workers' compensation up to January 1991 as being $57,400.27. Multiplying the amount Baker was currently receiving in workers' compensation by 48 months, the court calculated that Baker would receive an additional $20,224.64 from the Ohio workers' compensation fund. The court also multiplied the amount Baker was receiving from unemployment compensation by 26 weeks and determined the amount to be $7,566. The court thus found the total

collateral benefits to be $85,210.91. This amount was to be subtracted from the jury award.

The district court's interpretation of the statute required it to then add back into the computation the total amount of workers' compensation premiums paid by Campbell Construction for its entire workforce. Campbell Construction had paid a total of $107,276.54 in workers' compensation premiums for all of its employees over the three-year period prior to the accident at issue in this case. The district court ruled that because the amount paid by Campbell for all of its employees exceed the amount of benefits received by Baker, the damage award would not be reduced at all.

The district court based its decision on its previous interpretation of O.R.C. § 2317.45 in *Deaton v. Dreis and Krump Mfg. Co.,* 134 F.R.D. 219 (N.D.Ohio 1991). The *Deaton* case was the first interpretation of O.R.C. § 2317.45 and involved an injury to a worker who had been on the job only one week. Deaton received $11,618 in collateral workers' compensation benefits. His employer had paid $15,624 in total premiums in the three years prior to Deaton's injury, but had expended only $5.20 in premiums for Deaton individually. So, under the district court's interpretation of the statute, there was no deduction from the jury award. The district court held:

The plain language of the statute leads this Court to conclude that Deaton's workers' compensation, which the statute requires to be deducted from the verdict, is completely offset by his employer's contribution. There are no qualifications in the statutory language, and it is a well-established principle in Ohio jurisprudence that the clear language of the statute must be given effect without judicial modification. In this case, O.R.C. § 2317.45(B)(2) speaks in terms of "the total of the costs, premiums, or charges for such benefits paid or contributed ... by the employer of the plaintiff...." The qualification which Dreis & Krump seeks to add to this language, that the employer's contribution must be limited to that portion directly attributable to

the plaintiff's employment, simply has no basis in the statutory language.

This conclusion is supported by the principal [sic] that statutes in derogation of the common law, such as this one, must be strictly construed. Prior to enactment of O.R.C. § 2317.45, Ohio followed the "collateral source rule," which precludes a subtraction from the jury award for collateral benefits, including workers' compensation benefits. Thus, under the pre-statute common law, Dreis & Krump would not be entitled to any deductions from the verdict of Deaton's workers' compensation benefits. To the extent that Deaton's common law recovery rights are restricted by O.R.C. § 2317.45, that restriction must be given a strict reading in his favor.

134 F.R.D. at 225–26, (citations omitted). The district court relied entirely on the logic of the *Deaton* case in refusing to reduce the jury award in this case.

### III

■ The district court's version of the proper calculation to be undertaken pursuant to O.R.C. § 2317.45 is at odds with the language, structure, and purpose of the statute. Under O.R.C. 2317.45, collateral benefits received by a plaintiff should be adjusted only by that portion of an employer's workers' compensation premiums directly related to the employment of the particular plaintiff. The language of § 2317.45(B)(2)(b) clearly supports this interpretation. The statute instructs as follows:

> As to any *disclosed collateral benefits* in relation to which both requirements of division (B)(2)(a) of this section are satisfied, determine the total of the costs, premiums, or charges *for such benefits* paid or contributed within the three-year period immediately preceding the accrual of cause of action, by the ... employer of the plaintiff.... (emphasis added).

The premiums paid to secure the collateral benefits are then added back into the calculation under § 2317.45(B)(2)(c)(ii). It is clear that the costs incurred to secure "such benefits," that is the collateral bene-

fits received by Baker, are equal to the amount of workers' compensation premiums paid by Campbell Construction *on Baker's behalf.* The cost of Baker's individual collateral benefits is not the total amount of premiums paid by Campbell Construction to provide these benefits to its entire workforce. The district court's interpretation of the statute focuses entirely on the word "total," while completely ignoring the rest of the sentence in which the word appears, especially the phrase "for such benefits."

Our interpretation is supported by the very few Ohio cases even tangentially dealing with this issue. In *Jeffers v. Phillips Ready Mix,* 1991 WL 1670, *3, 1991 Ohio App. LEXIS 50, *7, for instance, an Ohio court states the following:

> The plain language of R.C. 2317.45(B)(2)(b) requires a plaintiff, entitled to a compensatory damage award in a tort action, to disclose all costs, premiums, or charges for the collateral benefits paid or contributed ... within the three-year period immediately preceding the accrual of the cause of action. R.C. 2317.45(B)(2)(b). This disclosure would be to the court and occur after the plaintiff's entitlement to the compensatory damages is determined. The amount of those costs, premiums, and charges is added to the balance derived under (B)(2)(c)(i), subject to the limitation that the credit could not exceed the amount of the subtracted collateral benefits.
>
> Although Jeffers produced evidence of the [workers' compensation] premiums paid by Sowder [Concrete Corp., Jeffers' employer] *on his behalf,* the trial court did not add this amount to Jeffers' award. We, therefore, remand this matter to the trial court to determine the *amount of premiums paid on behalf of Jeffers by Sowder* and order the award be increased by *the premiums paid on account of Jeffers.* (Emphasis added).

Although the court does not engage in the calculation directly, the above language makes clear that the state court interprets O.R.C. § 2317.45 to require only the *individual* and not the *total* workers' compen-

sation premiums to be added back into the computation of the adjusted jury award.

The purpose of the Ohio law, as far as it can be ascertained from the language of the statute, seems to be to prevent injured plaintiffs from receiving a windfall due to their injury. The statute requires that damage awards be adjusted for collateral benefits received as a result of an injury so that a plaintiff will receive, in total, only the amount that a jury has determined to be adequate compensation for the particular injury. Whatever its wisdom, the logic of the Ohio law is to prevent plaintiffs from recovering twice: once from collateral sources and once from the tortfeasor. The statute does, however, allow plaintiffs to recover the costs of securing the collateral benefits that are being used to offset the compensatory damage award. The statute implicitly (and correctly) concludes that workers pay the cost of "employer-provided" benefit programs in the form of lower wages. Hence, after the collateral benefits are subtracted from the jury award, the premiums paid to purchase those benefits are added back. This provides the plaintiff, in total, with the exact amount awarded by the jury, when collateral benefits and costs are accounted for.

Given this structure and purpose, the only reasonable interpretation of O.R.C. § 2317.45 requires a credit for the costs of only those collateral benefits received by the individual plaintiff. There would be no rational basis, even if the statutory language were ambiguous, for crediting an individual plaintiff and beneficiary of a collateral benefit with the premiums paid to secure the benefit not only for that individual, but for the entire workforce of the plaintiff's employer. In this case, the language is clear and the result is compelled by the unambiguous statutory language.

To illustrate the odd results that the district court's interpretation would produce, consider two employees who received identical injuries on the job caused by third-party tortfeasors. One of the injured workers is employed by a large corporation employing hundreds of workers while the other works at a firm with 2 or 3 employees. Both receive workers' compensation benefits of $100,000 and win jury awards of $200,000. The employee of the large company would receive every dollar of the jury verdict, since any collateral benefits received by the employee would be offset by the total premiums paid by the large corporation. On the other hand, the employee who works for the small firm would probably have a substantial reduction in his verdict. Such a disparate result is avoided by following the dictates of the statutory language and simply adding back only the share of the total premiums paid to cover the employee at issue. The district court's interpretation of the statute would defeat its operation in many cases, and do so on an arbitrary basis, the size of the workforce of a particular plaintiff's employer. This should not be presumed to be the intent of the Ohio legislature.

Our interpretation, true to the language and consistent with the purpose of the statute, finds further support in the writings of Professor Stanton G. Darling, the principal author of O.R.C. § 2317.45. In 1986, Professor Darling served as Special Counsel to the House Select Committee to study the civil justice system. In 1987, he served as an advisor on tort and civil justice matters to the Office of the Speaker of the House. Much of the Ohio Tort Reform Act was drafted by the Professor. In his treatise, *Ohio Civil Justice Reform Act* at 133 (Banks–Baldwin 1987), Professor Darling writes:

> As to any disclosed collateral benefit which satisfies both criteria, the court is to determine any cost, premiums, or charges paid or contributed to obtain the benefit within the three-year period immediately preceding accrual of the cause of action by the plaintiff or other specified persons (as noted above). *For a benefit which was directly purchased by an employer on a group basis, the three year credit will presumably be based on a pro-rata or other appropriate portion of the total cost, premium, or charge paid by the employer.* (Emphasis added).

When the common law regime is changed statutorily, the contours of that change can

be ascertained only from the language of the statute that makes the change. In this case, the clear language of the statute defines the statutory scheme that has displaced the common law regime in Ohio. The only reasonable interpretation of the statute is one in which only the pro-rata share of the total workers' compensation premiums paid by an employer are entered into the calculation of O.R.C. § 2317.45. The statute's unambiguous language leaves no room for any other construction.

### IV

■ Goldblatt's second claim on appeal is that the district court erred when it determined that the only collateral benefits that Baker would receive after June 1991 would be $97.33 per week in workers' compensation benefits. O.R.C. § 2317.45(B)(2) requires reduction of compensatory damages awards in light of collateral benefits that the plaintiff has received or "is reasonably certain to receive" within sixty months after the entry of judgment. The district court applied this standard in its oral opinion and found the following collateral benefits:

> ... [W]orkmen's compensation medicals for the amount of $31,068.58, and workers' compensation wages already received of $26,331.69; workers' compensation weekly amount of $97.33 for 48 months comes to a total of $20,244.64, and finally, 26 weeks of unemployment insurance, which comes to $7,566.

> This works out to a total of $85,210.91 in collateral benefits.

Baker was off work for a period of time following the accident. During that period he received $281 per week from workers' compensation. In January 1991, Baker was forced to leave his job with Campbell Construction. At that time, Baker qualified for unemployment benefits of $582 every two weeks. The unemployment benefits would last for 26 weeks, or until June 1991. Once Baker began receiving unemployment benefits, however, his workers' compensation payment was reduced to $97.33 per week.

In calculating Baker's total collateral benefits, the district court assumed that the only benefits Baker would receive after June 1991 would be the $97.33 in workers' compensation benefits. Goldblatt maintains that this figure is contrary to the evidence. Goldblatt contends that Baker could have reapplied for unemployment benefits after the initial 26–week period expired. In addition, Goldblatt argues that there was an obvious correlation between the lower workers' compensation benefits received and the unemployment compensation benefits. According to Goldblatt, in the unlikely event that the Baker does not receive unemployment benefits beyond June 1991, the workers' compensation benefits would increase to fill the void. At the very least, says Goldblatt, the plaintiff would receive the same benefits that he did during the initial period of disability, which would amount to $14,600 per year. The district court's figure only amounts to approximately $5,000 per year in collateral benefits after June 1991. Goldblatt therefore concludes that the district court greatly understated Baker's future collateral benefits and, as a result, also understated the amount by which the jury award should be reduced.

The Ohio statute states that the damage award can be offset by only those collateral benefits the plaintiff is "reasonable certain" to receive. The calculation of Mr. Baker's future collateral benefits, however, is fraught with uncertainty. Predicting Baker's future benefits presented the district court with a number of potential scenarios. Mr. Baker might indeed have reapplied for and continued to receive unemployment compensation beyond the initial 26–week benefit period. Or, perhaps, if the unemployment payments ceased, the weekly workers' compensation benefit might have been adjusted upward and continued for the entire allowable time period of two hundred weeks. O.R.C. § 4123.56. On the other hand, Mr. Baker might, at any time in the future, find other employment. The effect of this new employment on the size of the payment from workers' compensation would presumably depend on the amount of Baker's new salary. If Baker's new salary were high enough, the workers'

compensation benefits would stop entirely. Contrary to what Goldblatt contends, then, the court's estimate of future collateral benefits might be a gross overstatement of the benefits that Baker will actually receive. The magnitude of this potential overstatement would depend on how soon Baker secures employment and at what wage. The point is that while at the time of the hearing Mr. Baker did not have another job, it was not reasonably certain that Mr. Baker would not take a job within the two hundred week maximum set forth in the workers' compensation statute.

The district court made the best estimate it could of the future benefits that Baker was "reasonably certain" to receive. The fact that time might prove the court's *ex ante* estimate to be too high or too low is, of course, not an argument for reversal of that determination. The district court was presented with evidence of the current amounts of Baker's workers' compensation and unemployment benefits, and made a judgment based on that information and without the benefit of hindsight. The court determined Baker's total collateral benefits by making reasonable inferences based on evidence in the record. The court did not abuse its discretion under O.R.C. § 2317.45 in determining the amount of Baker's reasonably certain future collateral benefits.

### V

For the reasons stated above, we AFFIRM the district court's initial calculation of the total collateral benefits Baker received as a result of his injury. However, we REVERSE the district court's interpretation of O.R.C. § 2317.45. We hold that the Ohio statute requires that only the workers' compensation premiums paid on behalf of Baker individually are to be added back into the calculation to determine the statutory adjustment of the jury award. We therefore REMAND this case to the district court for a recalculation of the reduction in the jury award under a proper interpretation of O.R.C. § 2317.45.