**[This opinion has been published in Ohio Official Reports at 69 Ohio St.3d 415.]**

SORRELL ET AL., APPELLANTS, *v*. THEVENIR, APPELLEE.

CLARK ET AL. *v*. QUALITY STORES, INC.

**[Cite as *Sorrell v. Thevenir*, 1994-Ohio-38.]**

*Torts—Damages—Collateral benefits—R.C. 2317.45 violates Sections 2, 5 and 16, Article I of the Ohio Constitution, and is unconstitutional in toto.*

R.C. 2317.45 violates Sections 2, 5 and 16, Article I of the Ohio Constitution, and is unconstitutional *in toto*.

(Nos. 92-2382 and 93-1041—Submitted January 11, 1994—Decided June 1, 1994.)

APPEAL from the Court of Appeals for Gallia County, No. 91-CA-4.

ON ORDER from the United States District Court, Northern District of Ohio, Western Division, Certifying Questions of State Law, No. 3:91CV7704.

_____

*Case No. 92-2382*

{¶ 1} In her complaint before the court of common pleas, plaintiff-appellant Sherry A. Sorrell alleged that on September 15, 1988, she was working as a cashier at Brown's Market. Plaintiff alleged that as she bent over to sweep dirt into a dustpan, defendant-appellee, James A. Thevenir, came up behind her and grabbed her about the waist. As a result of defendant's unexpected conduct, plaintiff pulled herself up suddenly and twisted. Consequently, plaintiff alleged she has endured severe pain, requiring medical treatment and causing her to miss work.

{¶ 2} Plaintiff and her spouse filed the instant action requesting damages for physical injuries, emotional distress, loss of income and loss of consortium, and demanded a jury trial. A jury eventually returned a verdict of compensatory damages in the amount of $10,128.26. In response to an interrogatory, the jury

declared that $5,000 of this amount was for pain and suffering. The jury awarded nothing for future damages, and nothing to plaintiff's husband.

**{¶ 3}** Subsequently, in accordance with R.C. 2317.45, the trial court conducted a postverdict hearing wherein plaintiff disclosed the extent and nature of all statutorily defined collateral benefits received by her. Defendant asserted that pursuant to R.C. 2317.45(B)(2) he was entitled to a setoff of the entire jury verdict, since plaintiff had received over $14,000 in workers' compensation benefits.

**{¶ 4}** In an opinion dated January 31, 1991, the trial court held R.C. 2317.45 to be unconstitutional under Section 16, Article I (right to a remedy), and Section 5, Article I (inviolate right to a jury trial) of the Ohio Constitution. In addition, the court held that since the fundamental constitutional right to a jury trial was involved, a strict scrutiny test applied in determining the constitutionality of R.C. 2317.45 under the Due Process Clause of the Ohio Constitution. The trial court concluded that the statute failed to meet the strict scrutiny test and further observed that "[t]he statute was enacted to cure a supposed 'insurance crisis.' There is no demonstrated evidence from which to conclude that a 'crisis' ever existed or that [Am. Sub.H.B. No. 1, 142 Ohio Laws Part I, 1661] cured this 'crisis.' There is no compelling reason to trample plaintiff's constitutional rights to relieve a particular industry of liability." Thus, the trial court entered judgment in favor of plaintiff for the entire amount of the jury verdict without setting off the collateral benefits (workers' compensation) she received.

**{¶ 5}** Upon appeal, the court of appeals reversed and remanded in a split decision. The appellate court majority held that while the case was not exactly on point, *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 576 N.E.2d 765, "indicates the [Supreme Court of Ohio] would find R.C. 2317.45 to be constitutional."

**{¶ 6}** The cause is now before this court pursuant to the allowance of a motion to certify the record.

*Case No. 93-1041*

2

{¶ 7} According to plaintiff-petitioner Bobbie Clark, on November 4, 1989, he was injured as the result of the negligence of defendant-respondent Quality Stores, Inc. in maintaining its property.

{¶ 8} Plaintiff and his spouse filed a personal injury action against defendant in the United States District Court for the Northern District of Ohio, Western Division. A jury returned a general verdict in favor of plaintiff in the amount of $241,168, plus $25,000 for the spouse's loss of consortium.

{¶ 9} Subsequently, defendant moved for a setoff of $146,000 for disability income, including future disability income, from Social Security and the state of Ohio, as well as the disability retirement benefits from the Public Employees Retirement System.

{¶ 10} Thereafter, in response to a motion by plaintiffs, the federal district court certified the following questions to this court:

"A. Whether O.R.C. {2317.45, which allows for the reduction of an award of damages in a tort action by the amount of collateral benefits, as defined in O.R.C. {2317.45, violates the Ohio Constitution[?]

"B. Are Social Security disability income benefits paid to Plaintiff a collateral source pursuant to O.R.C. {2317.45(A)(1)(a) where the benefits were received following the tort, and the plaintiff asserted and the defendant disputed that the plaintiff was permanently and totally disabled as a consequence of the tort, and each party submitted evidence to support its position at trial[?]

"C. Are payments made through a disability income program by Plaintiff's employer, the State of Ohio, a collateral source pursuant to O.R.C. {2317.45(A)(1)(a) where the benefits were received following the tort, the plaintiff asserted and the defendant disputed that the plaintiff was permanently and totally disabled as a consequence of the tort, and each party submitted evidence to support its position at trial[?]

"D. Does Plaintiff's election to receive disability retirement benefits pursuant to the provisions of the Public Employees Retirement System, O.R.C. {145.01 et seq., cause those benefits to be deemed a collateral source pursuant to O.R.C. {2317.45(A)(1)(a) where the benefits were received following the tort, the plaintiff asserted and the defendant disputed that the plaintiff was permanently and totally disabled as a consequence of the tort, and each party submitted evidence to support its position at trial[?]

"E. What procedure should a trial court follow to determine whether an entitlement to such collateral benefits resulted from the tort, where the jury has returned a general verdict in favor of the plaintiff[?]

"F. Which party has the burden of proof on the issues under O.R.C. {2317.45(B)(2)(a)(i) of what collateral benefits have been received or are 'reasonably certain' to be received as a result of the tort within the next sixty months after entry of judgment[?]"

{¶ 11} The cause is now before this court pursuant to Rule XVI (now XVIII) of the Supreme Court Rules of Practice.

_____

*Murray & Murray Co., L.P.A.*, *Thomas J. Murray*, *Nancy L. Ogden* and *Alicia Wolph*; *Schulman, Mestel & Burick Co., L.P.A.*, and *Allen J. Schulman, Jr.*; *Porter, Little, Sheets & Lentes* and *Jennifer L. Sheets*, for appellants.

*Theisen, Brock, Frye, Erb & Leeper Co., L.P.A.*, *John E. Erb*, *James S. Huggins* and *Paul A. MacKenzie*, for appellee.

*A. William Zavarello* and *Mark W. Ruf*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Vorys, Sater, Seymour & Pease* and *William D. Kloss*, urging affirmance for *amicus curiae*, Ohio Insurance Institute.

*Weston, Hurd, Fallon, Paisley & Howley*, *Ronald A. Rispo* and *William H. Baughman, Jr.*, urging affirmance for *amicus curiae*, Ohio Association of Civil Trial Attorneys.

*Wolske & Blue*, *Gerald S. Leeseberg* and *Sarah H. Meirson*, for petitioners.

*Shumaker, Loop & Kendrick* and *Robert G. Clayton, Jr.*, for respondent.

_____

**A. WILLIAM SWEENEY, J.**

**{¶ 12}** In the cases before us, R.C. 2317.45 is assailed as being unconstitutional on the grounds that it violates the following provisions of the Ohio Constitution: Section 16, Article I (due process, right to a remedy and open courts), Section 2, Article I (equal protection), and Section 5, Article I (right to a jury trial). For the reasons that follow, we hold R.C. 2317.45 to be unconstitutional under all of the foregoing constitutional provisions.

**{¶ 13}** In determining the constitutionality of any statute, we begin our analysis with the principle that all legislative enactments enjoy a strong presumption of constitutionality. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus; *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274, 28 OBR 346, 349, 503 N.E.2d 717, 720; *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 631, 576 N.E.2d 722, 727. While some of the arguments of the parties and *amici curiae* relate to the wisdom of abrogating the collateral source rule, this court's duty is to ignore such arguments and determine the constitutionality of R.C. 2317.45 as an exercise of legislative power. *State ex rel. Bishop v. Mt. Orab Village Bd. of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 498, 40 N.E.2d 913, 919.

I

{¶ 14} R.C. 2317.45,[1] part of the Tort Reform Act of 1987 ("Act"), was enacted by Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1694, and became

---

1.  R.C. 2317.45 provides as follows:

"(A)(1) As used in this section:

"(a) 'Collateral benefits' means benefits that a plaintiff has received, or may be entitled to receive within the next sixty months after the entry of judgment, as a result of an injury, death, or loss to person or property that is a subject of a tort action, from any of the following:

"(i) The government of the United States, or any state or any political subdivision of any state, under a program that provides medical, hospital, sickness, dental, or other health benefits, including, but not limited to, social security, medicare, and medicaid;

"(ii) A federal, state, or political subdivision of a state disability income or workers' compensation program, or a wage continuation program of an employer;

"(iii) A medical, hospital, sickness, dental, or other health insurance program;

"(iv) An accident insurance program that provides medical, hospital, sickness, dental, or other health benefits;

"(v) A contract or agreement under which medical, hospital, sickness, dental, or other health services are provided or under which the cost[s] of those services are paid for or reimbursed.

"(b) 'Rights of recoupment' means rights or [sic] recoupment through subrogation, trust agreement, contract, lien, operation of law, or otherwise.

"(c) 'Tort action' means a civil action for damages for injury, death, or loss to person or property. 'Tort action' includes a product liability claim that is subject to sections 2307.71 to 2307.80 of the Revised Code, but does not include a civil action for damages for a breach of contract or another agreement between persons.

"(d) 'Trier of fact' means the jury or, in a nonjury action, the court.

"(2) As used in this division and divisions (B)(2)(a) and (c)(i) of this section, 'plaintiff' includes, in a wrongful death action, the decedent and all beneficiaries of the action.

"(B)(1) Except as provided in division (C) of this section, if a plaintiff in a tort action is entitled to an award of compensatory damages, that plaintiff shall disclose to the court after such entitlement is determined all relevant collateral benefits, all rights of recoupment relative to the disclosed collateral benefits, and the costs, premiums, or charges for any of the disclosed collateral benefits paid or contributed within the three-year period immediately preceding the accrual of the cause of action, by the plaintiff, any member of his immediate family, or the employer of the plaintiff or any member of his immediate family or, in a wrongful death action, the decedent, any beneficiary of the action, the employer of the decedent or any beneficiary of the action, any member of the immediate family of the decedent or any such beneficiary, or the employer of any member of the immediate family of the decedent or any such beneficiary.

"(2) Upon the disclosure required by division (B)(1) of this section, the court shall do all of the following:

"(a) Determine whether both of the following are satisfied in relation to any of the disclosed collateral benefits:

"(i) The plaintiff has received the disclosed collateral benefit or is reasonably certain to receive it within the next sixty months after the entry of judgment;

"(ii) There are no rights of recoupment respecting the disclosed collateral benefit.

"(b) As to any disclosed collateral benefits in relation to which both requirements of division (B)(2)(a) of this section are satisfied, determine the total of the costs, premiums, or charges

effective January 5, 1988.  The purpose of the Act, as stated in its title, is "to make changes in civil justice and insurance law, thereby reducing the causes of the current insurance crisis and preventing future crises, and ensuring the availability and affordability of insurance coverages required by charitable nonprofit organizations, public organizations, political subdivisions, individual proprietors, small businesses, and commercial enterprises."

{¶ 15} One commentator noted that another purpose of the Act is to prevent double recoveries in tort actions.  Darling, Ohio Civil Justice Reform Act (1987) 130-131; see, also, Note, The Constitutionality of Offsetting Collateral Benefits Under Ohio Revised Code Section 2317.45 (1992), 53 Ohio St. L.J. 587; *Baker v. Goldblatt* (C.A. 6, 1992), 955 F.2d 402, 407.  However, opponents of the Act, including the Ohio Public Interest Campaign, claimed that the insurance industry had contrived an insurance crisis in order to promote and protect "organized price

---

for such benefits paid or contributed within the three-year period immediately preceding the accrual of the cause of action, by the plaintiff, any member of his immediate family, or the employer of the plaintiff or any member of his immediate family or, in a wrongful death action, the decedent, any beneficiary of the action, the employer of the decedent or any beneficiary of the action, any member of the immediate family of the decedent or any such beneficiary, or the employer of any member of the immediate family of the decedent or any such beneficiary;

"(c) Prior to entering judgment for the plaintiff, do both of the following:

"(i) Subtract from the compensatory damages that the plaintiff otherwise would be awarded the amount of any disclosed collateral benefits in relation to which both requirements of division (B)(2)(a) of this section are satisfied:

"(ii) Subject to the limitation specified in this division, add to the balance derived under division (B)(2)(c)(i) of this section the total of any costs, premiums, and charges described in division (B)(2)(b) of this section.  The amount of those costs, premiums, and charges that is added to that balance shall not exceed any amount subtracted pursuant to division (B)(2)(c)(i) of this section from the compensatory damages that the plaintiff otherwise would be awarded.

"(3) Except as provided in division (B)(1) of this section, in another section of the Revised Code, or in the Rules of Evidence, evidence of collateral benefits is not admissible in a tort action and shall not be submitted to or considered by the trier of fact in determining whether to award compensatory damages to a plaintiff in a tort action or in determining the amount of any such damages.

"(C) This section does not apply as follows:

"(1) In tort actions against the state in the court of claims or in tort actions against political subdivisions of this state that are commenced under or are subject to Chapter 2744. of the Revised Code;

"(2) To any medical claim, as defined in section 2305.11 of the Revised Code."

gouging" by insurance underwriters. Gongwer News Service, Inc., Ohio Report (Jan. 21, 1987) 2. See, also, Schroeter & Rutzick, "Tort Reform"—Being an Insurance Company Means Never Having to Say You're Sorry (1986), 22 Gonzaga L.Rev. 31.

{¶ 16} In any event, one effect of the Act is to limit the collateral source rule adopted in *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235.[2] We turn now to evaluating R.C. 2317.45 in light of the aforementioned provisions of the Ohio Constitution.

II

Jury Trial

{¶ 17} As this court stated in *Cleveland Ry. Co. v. Halliday* (1933), 127 Ohio St. 278, 284, 188 N.E. 1, 3: "The right to a jury trial does not involve merely a question of procedure. The right to jury trial derives from Magna Charta. It is reasserted both in the Constitution of the United States and in the Constitution of the State of Ohio. For centuries it has been held that the right of trial by jury is a fundamental constitutional right, a substantial right, and not a procedural privilege." Accord *Kneisley v. Lattimer-Stevens Co.* (1988), 40 Ohio St.3d 354, 356, 533 N.E.2d 743, 746. It has also been held that "[t]he right of trial by jury, being guaranteed to all our citizens by the constitution of the state, cannot be invaded or

---

2. The syllabus of *Pryor* states in part:
"1. In a tort action the measure of damages is that which will compensate and make the plaintiff whole.
"2. The collateral source rule is an exception to the general rule of compensatory damages in a tort action, and evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act.
"3. Under the collateral source rule, benefits in the form of diminished wages, received by a plaintiff from his employer during the period he is not able to work because of a tort-feasor's negligent act, are collateral benefits and are not admissible on the issue of damages. However, if the tort-feasor claims that benefits received are not collateral but are direct benefits, the burden of establishing that such benefits are direct benefits, and therefore admissible on the issue of damages, is on the tort-feasor."

violated by either legislative act or judicial order or decree." *Gibbs v. Girard* (1913), 88 Ohio St. 34, 102 N.E. 299, paragraph two of the syllabus.

{¶ 18} Section 5, Article I of the Ohio Constitution provides:

"The right of trial by jury shall be *inviolate*, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury." (Emphasis added.)

{¶ 19} However, this constitutional provision does not guarantee a jury trial in all cases, but only for those causes of actions where the right existed at common law at the time the Ohio Constitution was adopted. *Belding v. State ex rel. Heifner* (1929), 121 Ohio St. 393, 169 N.E. 301, paragraph one of the syllabus. Given that negligence actions, which evolved from the common-law action of trespass on the case, and battery actions existed at common law at the time of the adoption of our state Constitution, Section 5, Article I is an  inviolate and fundamental right that applies to the actions herein. *Kneisley*, *supra*, 40 Ohio St.3d at 357, 533 N.E.2d at 746.

{¶ 20} R.C. 2317.45 requires trial courts to deduct from a plaintiff's jury award collateral benefits which have been or will be received by the plaintiff, irrespective of whether the collateral benefits are actually duplicated in the jury's verdict. The statute does not require that damages be allocated between economic or noneconomic damages or even past or future economic damages. The statute merely directs the trial court to deduct the amount of the collateral benefit from the total jury award. In this respect, courts may, consistent with R.C. 2317.45, enter judgments in disregard of the jury's verdict and thus violate the plaintiff's right to have all facts determined by the jury, including damages. See *Miller v. Wikel Mfg. Co.* (1989), 46 Ohio St.3d 76, 81, 545 N.E.2d 76, 81 (Douglas, J., concurring in part and dissenting in part). As a result of R.C. 2317.45, plaintiff Sorrell in *case No. 92-2382* has not been fully compensated for her injuries because the specific jury award for her pain and suffering is totally eliminated due to her receipt of

workers' compensation benefits, even though workers' compensation allows no compensation whatsoever for pain and suffering. As plainly illustrated by Mrs. Sorrell's case, R.C. 2317.45 can wipe out an entire jury award and essentially grant the tortfeasor a rebate for the damages he caused. See *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 710, 576 N.E.2d 765, 784 (A.W. Sweeney, J., concurring in part and dissenting in part). Instead of eliminating a double recovery, as is one of the statute's ostensible goals, R.C. 2317.45 eliminated any recovery the jury found that Mrs. Sorrell was entitled to for her pain and suffering. In the case of Mr. Clark in *case No. 93-1041*, the jury award could also be seriously curtailed by R.C. 2317.45.

{¶ 21} We hold that R.C. 2317.45 encroaches upon the fundamental and inviolate right to trial by jury, and therefore is unconstitutional under Section 5, Article I of the Ohio Constitution.

III

Due Process

{¶ 22} Section 16, Article I of the Ohio Constitution provides, *inter alia*, that every person who sustains a legal injury "shall have remedy by due course of law." The "due course of law" provision is the equivalent of the "due process of law" provision in the Fourteenth Amendment to the United States Constitution. *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 544, 21 O.O. 422, 424, 38 N.E. 2d 70, 72.

{¶ 23} Defendants contend that the rational basis test as applied in Morris, supra, is applicable here in determining whether R.C. 2317.45 is constitutional under the Due Process Clause. According to principles of due process, however, governmental action which limits the exercise of fundamental constitutional rights is subject to the highest level of judicial scrutiny. See, *e.g.*, *Natl. Assn. for Advancement of Colored People v. Alabama ex rel. Patterson* (1958), 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488. Under the strict scrutiny standard for reviewing legislation which restricts the exercise of fundamental rights, a statute will be

considered unconstitutional unless it is shown to be necessary to promote a compelling governmental interest. See *Shapiro v. Thompson* (1969), 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600, 615; and *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 198-199, 72 O.O.2d 112, 114, 331 N.E. 2d 723, 726 (equal protection cases).

{¶ 24} As pointed out earlier, the right to a jury trial in negligence and personal injury actions is a fundamental right. Thus, in order to determine whether R.C. 2317.45 violates the Due Process Clause of the Ohio Constitution, a strict scrutiny standard of review applies.

{¶ 25} In our view, R.C. 2317.45 has not been shown to be necessary to promote a compelling state interest that requires undermining the fundamental and inviolate right to a jury trial. Moreover, we believe that R.C. 2317.45 does not withstand scrutiny even under the less stringent rational basis standard employed in *Morris*, *supra*, because it does not bear a real and substantial relationship to the health, safety, morals or general welfare, and it is unreasonable and arbitrary. See *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717.

{¶ 26} The question whether R.C. 2317.45 addresses its goal of reducing the causes of the so-called insurance crisis is debatable given the paucity of credible empirical evidence that a crisis existed, or that there is a relationship between tort reform legislation and the availability or affordability of insurance. Compare, *e.g.*, *Natl. Underwriter* (Dec. 21, 1984); Insurance Services Office, *Chief Executive Circular* 2 (ISO, October 3, 1986); with Vilsack, Insurance Crisis: Fact and Fiction, (1987), 36 Drake L.Rev. 745; *Consumer Reports* (Aug. 1986), "The Manufactured Crisis" 544.

{¶ 27} However, with respect to the goal of R.C. 2317.45 of eliminating double recoveries, the means employed in the statute to attain the goal are both irrational and arbitrary. Of primary significance is that the statute requires deductions from jury verdicts irrespective of whether a collateral benefit defined in

R.C. 2317.45(A)(1) is actually included in the verdict. While the goal of preventing double recoveries is not arbitrary or unreasonable, as the majority held in *Morris*, *supra*, R.C. 2317.45 fails to take into account whether the collateral benefits to be deducted are within the damages actually found by the jury, especially where there are no interrogatories to quantify the categories of damages that make up the general verdict. Thus, the statute can arbitrarily reduce damages that a jury awards a plaintiff, since under the statute it is irrelevant whether any collateral benefit actually represents any portion of the jury's award. In the case of Mrs. Sorrell, R.C. 2317.45 arbitrarily and unreasonably eliminated her entire jury award since, her workers' compensation benefits exceeded the jury verdict of damages, notwithstanding that workers' compensation pays nothing for pain and suffering.

{¶ 28} In addition, *amicus curiae* Ohio Academy of Trial Lawyers raises the persuasive argument that no double recovery from a tortfeasor occurs in the typical tort case involving collateral benefits, since ordinarily one of the supposed double recoveries is merely the plaintiff's benefit of his bargain with his own insurance company. In both of the causes *sub judice*, the benefit of the bargain is the employer-paid workers' compensation and disability compensation programs that are earned by the plaintiff-employees as an employment benefit.

{¶ 29} In any event, regardless of whether the jury allocates damages to categories, R.C. 2317.45 does not accord due process to tort victims under either the strict scrutiny or rational basis test, and therefore we hold that it violates the Due Process Clause found in Section 16, Article I of the Ohio Constitution.

IV

Equal Protection

{¶ 30} Section 2, Article I of the Ohio Constitution provides:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

{¶ 31} The standard for determining whether a statutory classification involving a fundamental right violates the Equal Protection Clause of the Ohio Constitution is again the strict scrutiny test. *Shapiro*, *supra*. The limit placed upon governmental action by the Equal Protection Clauses of the Ohio and United States Constitutions are nearly identical. *Kinney v. Kaiser Aluminum & Chem. Corp.* (1975), 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 207-208, 322 N.E.2d 880, 882. Thus, the statutory classifications of R.C. 2317.45 are unconstitutional unless it can be shown that they are necessary to promote a compelling governmental interest. *Shapiro*, *supra.*

{¶ 32} R.C. 2317.45 and 2305.27 establish two classifications of tort victims: medical malpractice tort victims and all other tort victims. In *Morris*, *supra*, the majority upheld the constitutionality of R.C. 2305.27 in setting off medical malpractice collateral benefits. However, the viability of that holding is questionable at best given our resolution of the causes *sub judice*.

{¶ 33} Under R.C. 2305.27, jury awards in medical malpractice claims are subject to a collateral source rule different from the rule for awards in all other tort cases. R.C. 2305.27 does not require deduction of collateral benefits attributable to insurance proceeds where premiums were paid either by or for the plaintiff, or by the plaintiff's employer. *Savage v. Correlated Health Serv., Ltd.* (1992), 64 Ohio St.3d 42, 591 N.E.2d 1216, and *Hodge v. Middletown Hosp. Assn.* (1991), 62 Ohio

St. 3d 236, 581 N.E.2d 529, held that the collateral source rule of R.C. 2305.27 does not require setoffs for benefits received from workers' compensation, Social Security or Medicare. However, under R.C. 2317.45, all non-medical-malpractice tort awards would be reduced by the amount of such benefits.

{¶ 34} In our view, the ostensible purposes of R.C. 2317.45 do not withstand equal protection scrutiny under a strict scrutiny analysis. Given that one of the purposes of R.C. 2317.45 is to limit double recoveries, the different treatment for medical malpractice tort victims with regard to collateral recovery is not necessary to promote a compelling governmental interest, especially where the statutory classifications are established in response to a crisis that has not clearly been established to have existed. See *Morris*, *supra*, 61 Ohio St.3d at 710-711, 576 N.E.2d at 784 (A.W. Sweeney, J., concurring in part and dissenting in part).

{¶ 35} Moreover, a statutory classification violates the Equal Protection Clause of the Ohio Constitution if it treats similarly situated people differently based upon an illogical and arbitrary basis. *Id*. See *State v. Buckley* (1968), 16 Ohio St.2d 128, 45 O.O. 2d 469, 243 N.E. 2d 66; and *Klepper v. Ohio Bd. of Regents* (1991), 59 Ohio St.3d 131, 570 N.E.2d 1124. The arbitrariness of R.C. 2317.45 in this regard is cogently pointed out by *amicus curiae*, Ohio Academy of Trial Lawyers:

"If there was an insurance crisis, it would be a crisis affecting all tort defendants. There is no rational reason for distinguishing between medical malpractice tort defendants and all other tort defendants. This disparate treatment can result in vastly different results involving the same injury. For example, two tort victims suffer the identical injury, the laceration of an artery resulting in death. One tort victim is injured by a piece of broken glass while driving a company truck within the scope of employment. The other tort victim is injured by the medical negligence of a physician who lacerates an artery during an elective surgery procedure. Both tort victims remain in the hospital for ten days before their death.

Due to the difference in the collateral source statutes, these two identical injuries may result in vastly different compensation for the victim. The Equal Protection Clause mandates that those similarly situated be similarly treated."

{¶ 36} Thus, even under the less stringent rational basis test applied by the majority in *Morris*, *supra*, we believe that R.C. 2317.45 is constitutionally infirm on equal protection grounds. Accordingly, we hold that R.C. 2317.45 also violates Section 2, Article I of the Ohio Constitution.

V

Right to a Remedy/Open Courts

{¶ 37} Section 16, Article I of the Ohio Constitution provides in full:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

{¶ 38} In construing this constitutional provision in *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 47, 512 N.E.2d 626, 628, we noted that "[w]hen the Constitution speaks of remedy and injury to person, property, or reputation, it requires an opportunity granted at a meaningful time and in a meaningful manner." Accord *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 60, 514 N.E.2d 709, 716: "Denial of a remedy and denial of a *meaningful* remedy lead to the same result: an injured plaintiff without legal recourse." (Emphasis *sic*.)

{¶ 39} In the Sorrells' case, the statute not only denies plaintiffs a meaningful remedy, it completely obliterates the entire jury award. As discussed earlier, the statute treats all collateral sources the same and requires collateral benefits to be deducted from the total jury award regardless of whether the jury specifically awards damages in a category for which there were collateral benefits. Under these circumstances where the collateral source benefits reduce the entire jury award, the tortfeasor obtains a rebate for the damages he or she caused, and the victim's rights to a jury trial, a meaningful remedy and open courts become

15

hollow rights hardly worth exercising. See *Morris*, *supra*, 61 Ohio St.3d at 710, 576 N.E.2d at 784 (A.W. Sweeney, J., concurring in part and dissenting in part).

**{¶ 40}** While R.C. 2317.45 does not completely abolish the right to open courts for tort victims, its effect is to hinder the fundamental right of victims to obtain satisfaction for injuries or damages sustained. In our view, Section 16, Article I not only protects the right to file a lawsuit, but also protects the right to a judgment or verdict properly rendered in the suit, since obtaining damages is the ultimate goal of any tort action. *Id.*, 61 Ohio St.3d at 708, 576 N.E.2d at 782-783.

**{¶ 41}** In addition, certain tort victims will realize that R.C. 2317.45 could render their trip to court futile since receipt of collateral benefits defined in the statute makes pursuit of a claim not worth the time and expense involved. For these tort victims, like plaintiffs herein, R.C. 2317.45 undermines the right to a jury trial, a meaningful remedy and open courts.

VI

**{¶ 42}** Based on all the foregoing, we hold that R.C. 2317.45 violates Sections 2, 5 and 16, Article I of the Ohio Constitution, and is unconstitutional *in toto*.

**{¶ 43}** Therefore, in *case No. 92-2382*, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated. In *case No. 93-1041*, the first certified question is answered in the affirmative, thereby rendering the remaining certified questions moot.

*Judgments accordingly.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and WRIGHT, J., dissent.

———————————

**MOYER, C.J., dissenting.**

**{¶ 44}** Since I do not find R.C. 2307.43 to be unconstitutional, I dissent from the majority's opinion.

**{¶ 45}** In *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 576 N.E.2d 765, we upheld the setoff of collateral benefits in medical malpractice actions against equal protection and due process challenges. We held that the General Assembly's elimination of double recoveries to plaintiffs is not "unreasonable or arbitrary," nor does it "offend fundamental fairness." *Id.* at 693, 576 N.E.2d at 772. I find that same logic applicable given the context in which the issues now arise.

**{¶ 46}** The majority holds that a plaintiff in a negligence case has rights to a remedy and a trial by jury that are violated by the setoff requirements of R.C. 2317.45. In both cases before us, as well as in every conceivable factual situation, the plaintiffs after the setoff will receive at least as much total compensation from all sources as the amount awarded by the jury. If the underlying purpose of tort law is to wholly compensate victims, due process is satisfied when the plaintiff recovers, from all sources, the amount that the jury deems a just and appropriate award. By disallowing a setoff for collateral benefits, the majority sanctions a windfall for the plaintiff at the expense of all insureds. One must ask, what purpose is served by such reasoning? The majority will allow a plaintiff to take substantially more than what a jury found to be full compensation. If a plaintiff's rights are violated by application of a collateral benefit setoff, then it follows that a defendant's rights are equally violated by abrogating the setoff provisions.

**{¶ 47}** The majority asserts that R.C. 2317.45 creates circumstances in which a tortfeasor may receive a "rebate." The purpose of tort law is thwarted by denying double recovery only if we assume that that purpose is to punish the tortfeasor and not to compensate the victim. The alternative, as expressed by the majority, is to create two liabilities where there was only one before, thereby doubling exposure, the cost of which will be shared by all who purchase liability insurance.

**{¶ 48}** Because I believe that the elimination of double recoveries is a rational exercise of the General Assembly's powers and that no fundamental right of the plaintiffs has been abridged, I dissent from the decision announced today.

WRIGHT, J., concurs in the foregoing dissenting opinion.

_____